# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1372

_____

| | | |
|---|---|---|
| Moyad Abdullah Alidani, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| Bob Dooley, Warden of the Durfee | * | |
| State Prison, Springfield, South | * | |
| Dakota, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: February 10, 2004

Filed: April 23, 2004

_____

Before RILEY and RICHARD S. ARNOLD, Circuit Judges, and HOVLAND,[1] District Judge.

_____

HOVLAND, District Judge.

_____

[1] The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

Moyad Abdullah Alidani appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition. Alidani claims that the district court[2] erred by dismissing his petition and that he was denied due process and a fair trial due to the trial judge's comments and the ineffective assistance of counsel because his attorney failed to make an immediate motion for mistrial based on the trial judge's comments. For the reasons stated below, we affirm.

## I.    FACTUAL BACKGROUND

The record reveals that the defendant, Moyad Abdullah Alidani, lived with his brother, Mansour Alidani, in an apartment in Sioux Falls, South Dakota. A woman by the name of Roxanne Helm and her husband, along with Helm's children (the seven-year-old victim and her younger brother) lived in an apartment directly above the Alidanis in August of 1997. In October of 1997, Roxanne Helm and her children moved into the Alidanis' one-bedroom apartment after a marital dispute and, within a short period of time, Roxanne Helm developed a romantic relationship with Mansour Alidani.

In early November 1997, the Alidani brothers, Roxanne Helm, and her two children moved into another apartment complex in Sioux Falls. Alidani's sexual contact with the victim took place in the apartment when the victim was alone with Alidani. The victim was seven years old at the time the sexual contact occurred. Moyad Abdullahh Alidani was 29 years old.

In April of 1998, the victim was visiting at her grandmother's house when the grandmother noticed that the victim was scratching her vaginal area. The grandmother took the victim into the bathroom and noted that her vaginal area was

---

[2] The Honorable Lawrence L. Piersol, Chief Judge, United States District Court, District of South Dakota.

"all chapped and raw" "almost to the point of bleeding." The victim then reluctantly told her grandmother that Alidani had inappropriately touched her. The record reveals that Alidani had exposed himself to the minor victim and also had the victim touch his penis and masturbate him to ejaculation.

Alidani was indicted by a Minnehaha County, South Dakota, grand jury for sexual contact with a minor in violation of South Dakota Codified Laws Section 22-22-7. A jury trial was held in state court in South Dakota in December 1998, and Alidani was found guilty as charged. On April 19, 2000, Alidani's conviction and sentence were affirmed by the South Dakota Supreme Court. State v. Alidani, 609 N.W.2d 152 (S.D. 2000). Alidani then filed an application for writ of habeas corpus in state court which was denied on the merits. On June 12, 2001, the South Dakota Supreme Court denied Alidani's motion for certificate of probable cause to appeal the denial of his petition for habeas corpus relief.

On August 2, 2001, Alidani filed a federal 28 U.S.C. § 2254 habeas petition in the district court of South Dakota asserting that he was denied due process and a fair trial, and that he received ineffective assistance of counsel. On December 24, 2002, the district court issued a Memorandum Opinion and Order denying Alidani's petition for habeas corpus relief.

On April 22, 2003, the district court issued a certificate of appealability under 28 U.S.C. § 2253(c). Alidani contends that his constitutional right to due process and a fair trial were violated because of the trial judge's comments to the minor victim that she did not have to take the oath again and by saying to her, "I know you're going to tell the truth." Alidani asserts that he received ineffective assistance of counsel because his attorney failed to make an immediate motion for mistrial based upon the trial judge's comments to the victim.

During the trial, the seven-year-old victim testified during the state's case-in-chief and was also called by the state to testify on rebuttal. At the time the victim was called as a rebuttal witness, the victim had already testified twice under oath – once at a pretrial hearing to determine her capacity for truthfulness and a second time at the trial. At trial, during her first appearance as a witness, the victim's testimony was directed to the issue of the sexual contact. The following day the victim again took the witness stand on rebuttal. The victim's rebuttal testimony was directed to the issue of whether anyone had made any promises to her. When the victim took the witness stand on rebuttal, she immediately put her hand in the air to take the oath again. The trial court apparently felt that it was unnecessary to again render the oath to her and made the following statement to the victim: "When you were here yesterday we gave you an oath to tell the truth, and remember, that just means that everything that you saw with your eyes and that you heard with your ears. Are you all set? You don't have to do it again. I know you're going to tell the truth."

The victim then testified briefly on rebuttal and said that her mother had promised her that if the defendant, Moyad Abdullah Alidani, did not go to jail, his brother, Mansour Alidani, would buy her "lots of toys." There was no cross-examination of the witness and no objection made to the trial court's comments.

The following morning, and prior to the submission of the case to the jury, counsel for Alidani moved for a mistrial based on the trial court's comments. The basis for the motion was the contention that the trial court had vouched for the truthfulness of the victim. The trial court denied the motion and stated on the record as follows:

> The court: Okay. I would state that my statement to her when – after we had gone through the swearing and everything she raised her hand again. We all understand that she raised her hand again and I wanted her to know that she did not need to take another oath. My comments to her that we know that you're going to tell truth is an expectation we

-4-

have of all witnesses. In addition, I would say that when we are dealing with seven– or an eight-year-old child that just turned eight, we deal a little different with that witness than anybody else. But frankly, that's a comment that I would make to any witness in terms of my expectation of that witness. When we say we know you are going to tell the truth as an expectation on the part of the witness, and I think the jury views it as such, particularly when you are dealing with a girl who's just turning eight. So in addition I think it went by so quickly that there's no way that it would have any significant impact on this trial. I'm not even sure that, frankly, that it registered with the jury in light of what's happening at the time. So your motion is noted and I don't feel it has in any way infringed on your client's right to a fair trial, particularly in light of the fact that I was present when it occurred and I think it surprised us all when she suddenly stuck her hand up in the air again to take the oath, either for the second or third time. And I wanted her to know that, you know, we trust you,[the victim], and this is not an aggressive, alien, unpleasant atmosphere and you should be comfortable here, and that's what my comment went to.

The trial court gave the jury the following cautionary instructions at the conclusion of the trial:

My actions during the trial and ruling on objections by counsel, or in comments to counsel, were in setting forth the law and these instructions are not to be taken by you as my opinion as to how this jury should determine the issues of fact. What the verdict shall be is your sole and exclusive responsibility.

Two judges preside over this case; the judge of the facts–you, the jury and the judge of the law, who is I. My function will be to preside over this trial to see that it proceeds in a fair, orderly, and efficient manner. I must also rule on questions of law arising during the trial and instruct you as to the law of the case. I am neutral in this case. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

Alidani did not request any special instructions to the jury regarding the trial court's comments.

Alidani was ultimately found guilty and sentenced to serve 15 years in the state penitentiary with 8 years suspended. Alidani contends that the trial court's statement ("I know you're going to tell the truth") put the court's stamp of authority on the victim's testimony, which he asserts is a violation of due process and his right to a fair trial.

## II.     LEGAL DISCUSSION

28 U.S.C. § 2254(d)  provides that an application from a state prisoner for a writ of habeas corpus shall not be granted unless the state adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2). To satisfy the "contrary to" test under 28 U.S.C. §2254(d)(1), the applicant must present a case which reaches a different result from governing United States Supreme Court precedent "on materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405 (2000).   Alidani has acknowledged that this case is materially distinguishable from any governing United States Supreme Court precedent.  We agree.  However, the United States Supreme Court decision in Quercia v. United States, 289 U.S. 466 (1933), raises some questions that warrant discussion.

In Quercia v. United States, the defendant had been charged with violating the Narcotic Act.  The case went to trial during which the defendant testified and presented a general denial of all charges. Following the presentation of the evidence, the trial court instructed the jury, in part, as follows:

> And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman and gentlemen, that he wiped his hands during his testimony. It is rather a curious thing, but that is almost always an indication of lying. Why it should be so we don't know, but that is the fact. I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.
>
> Now, that opinion is an opinion of evidence and is not binding on you, and if you don't agree with it, it is your duty to find him not guilty.

Quercia v. United States, 289 U.S. 466, 468-469 (1933) (emphasis added).

Supreme Court Justice Hughes delivered the opinion of the court and made the following observation:

> This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference, and may prove controlling." This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence "should be so given as not to mislead, and especially that it should not be one-sided"; that "deductions and theories not warranted by the evidence should be studiously avoided."

289 U.S. 466, 470.

The United States Supreme Court concluded that the trial court had overstepped its bounds and the judge had put his own experience, with all the weight

-7-

to be attached to it, on the scale against the accused. The Supreme Court held that the trial court's egregious comments resulted in highly prejudicial error that warranted a reversal. 289 U.S. 466, 472.

In a similar vein, this court in United States v. Singer, 710 F.2d 431 (1983)(en banc), held that the district court had so far injected itself into the trial as to give the jury the impression that it favored the prosecution and thereby deprived the defendants of a fair trial. In United States v. Singer, the record was replete with overwhelming evidence that the trial court had unduly intruded into the trial by reason of the judge's comments and excessive questioning of witnesses that was admittedly designed to assist the "overwhelmed" government attorneys. The trial court's comments were, in almost all instances, designed to clarify the government witnesses' testimony, to assist the government counsel, to indicate to government counsel when he should or should not make objections, to instruct government counsel on how to make the evidence more intelligible to the jury, and to suggest to government counsel how to properly examine or cross-examine a witness. 710 F.2d 431, 436. The trial court had not simply made a few isolated and arguably improper comments. Instead, the trial court had injected himself into the trial throughout the entire proceedings, and his comments clearly pervaded the overall fairness of the trial. Id. As a result, this Court, on rehearing *en banc*, concluded that the defendants had been so prejudiced as to deprive them of a fair and impartial trial.

We believe that the present case is readily distinguishable from the precedent of the Supreme Court of the United States as established in Quercia v.United States. The present case is also distinguishable from the precedent of this Court in United States v. Singer. The trial court in each of these cases had actively injected himself into the entire trial proceedings and had made extremely prejudicial comments that pervaded the overall fairness of the trial and which tended to accentuate and emphasize the government's case. More important, the trial court's charge to the jury in Quercia concerning the defendant's credibility was extremely egregious and

-8-

prejudicial because the trial court addressed the jury and specifically informed the jury that "every single word that man (the defendant) said... was a lie." The present case is clearly distinguishable from the facts in <u>Quercia</u> and the highly prejudicial comments made by the trial court to the jury. Alidani has not met his burden and has failed to satisfy the "contrary to" test under 28 U.S.C. § 2254(d)(1).

As a result of having failed to satisfy 28 U.S.C. § 2254(d)(1), Alidani then asserts that he has satisfied 28 U.S.C. § 2254(d)(2) and argues that the determination the trial judge's comment was not prejudicial was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. It is clear that the parties agree to nearly all of the underlying facts. The disputed issue is whether one underlying fact–the trial court's statement, "I know you're going to tell the truth," was prejudicial to Alidani and resulted in a denial of due process and a fair trial. Alidani has made no clear and convincing showing that the jury was impacted by the judge's statement. <u>See</u> 28 U.S.C. § 2254(e)(1).

The context of the comments made by the trial court must be carefully considered in the analysis of the issues presented. The challenged comments by the trial court were made on rebuttal the day after the state rested its case and immediately preceding the testimony from the victim. The trial court's comments were made in the context of the court explaining to the young victim that she need not take the oath again. The isolated comment to the witness was simply a reminder to the child that she was still under oath to tell the truth. There is no showing that the timing and the context of the trial court's comments prejudiced Alidani or had any effect on the jury.

We agree with the South Dakota Supreme Court which noted that the trial court's comments could have been made with more judicial clarity. <u>State v. Alidani</u>, 609 N.W.2d 152, 156 (S.D. 2000). However, there has been no showing of any intent on the part of the trial court to vouch for the credibility of the victim/witness, to

remove the question of the victim's credibility from the jury, or to enhance her status with the jury. The trial court's statement taken in context was not a statement vouching for the victim's credibility. Instead, the statement was designed to calm a young, seven-year-old victim of a sexual crime and was made in the context of the trial court's expectation of the witness to tell the truth.

The trial court also gave the jury several cautionary instructions concerning any personal comments made by the judge during the trial as well as closing instructions concerning the role of the jury. Under this record and in this factual context, Alidani has not met his burden of establishing error.

Finally, Alidani contends that he received ineffective assistance of counsel because his trial attorney failed to make an immediate motion for mistrial based on the trial judge's comment to the victim. The record reveals that the motion for mistrial was made the next morning in chambers. In order to prevail on the claim of ineffective assistance of counsel, Alidani must satisfy the tests set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and he must demonstrate deficient performance and prejudice.

The United States Supreme Court has set forth a two-part test for evaluating ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

To satisfy the first prong, the movant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To satisfy the second prong, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We agree with the district court's finding that there is no reasonable probability that if an immediate objection or a motion for mistrial had been made, that the result of the trial would have been different. As a result, Alidani has failed to demonstrate deficient performance or prejudice.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's denial of Alidani's 28 U.S.C. § 2254 application for habeas corpus relief.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

The Court rightly points out that on review of an application from a state prisoner for a writ of habeas corpus the writ "shall not be granted unless the state adjudication resulted in a decision that (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " Ante at 6. The Court also rightly acknowledges that the central question in our current review is whether the trial judge's denial of Mr. Alidani's mistrial motion was contrary to existing Supreme Court precedent. Ibid., and see Williams v. Taylor, 529 U.S. 362, 405 (2000) ("A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.").

-11-

Unlike the Court, however, I believe the South Dakota trial judge's denial of the motion for mistrial contradicts Quercia v. United States, 259 U.S. 466 (1933). Therefore, I respectfully dissent.

The statute requires, in order to satisfy the "contrary to" portion of 28 U.S.C. § 2254, that the petitioner must show that the state courts in his case reached a result different from governing precedent from the Supreme Court of the United States "on materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405 (2000). I do not contest the Court's factual summary of Quercia, but I do question the Court's attempt at distinguishing the legal conclusions reached by that case. Quercia stands not merely for the minimal claim that a trial judge is prohibited from making only "extremely egregious and prejudicial" comments as to the credibility of a witness. Ante at 8. Instead, the case holds that it is almost always reversible error for a trial judge, by injecting his own opinion into the analysis, to intrude on, and thus take away from, the defendant's right to have the jury weigh the credibility of a witness. Quercia, 289 U.S. at 471.

In the present case, by declaring in front of the jury that he knew the victim-witness would tell the truth, the trial judge exceeded his role as "governor of the trial," and took on the jury's assigned task. Id. at 469, 471. Comments of a trial judge as to a witness's credibility are "of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Id. at 472. There could be exceptions to this rule, of course. There are always exceptions. For example, if the witness as to whom the offending comment was made has his testimony stricken for some reason, or if the witness is on the stand only briefly and gives truly inconsequential testimony, I could see a basis for letting the conviction stand notwithstanding the comments of the trial judge. Nothing of the kind occurred here, however.

What are the factors that might serve to distinguish Quercia from the present case? The Court seems to place considerable weight on the trial judge's subjective intention — he did not mean to affect the jury's deliberation. I do not believe that this factor can be controlling or even relevant in this context. The important thing is what the jury heard. That is all they know about the judge's intention. I would look to what was said, and not to what the judge intended. There are some things that a trial judge should just not say, whatever his intent. The case at hand is a good example. It is not for trial judges to weigh credibility in jury cases. The comment here intruded on the defendant's right to have the issue of credibility determined by the jury only. It is important to remember that this case came down to a swearing match. Was the defendant telling the truth, or was the prosecuting witness? So the judge's comments went straight to the heart of the key issue that the jury had to decide.[3]

It may be true, as the Court says, that the facts in Quercia were "worse" than the facts here.[4] In Quercia, the comment related to the credibility of the defendant

_____

[3]The trial court, in stating its intention the morning after the comments were made, said that one of his reasons for making the statement was to let the witness know that "we trust you." This comment reinforces the position I am taking, I think. It is not for judges to say out loud, in front of a jury, that they trust one witness or another. Here, of course, the comment was out loud but not in front of the jury, but it was indicative of the judge's intention in making the comment the previous day, which the jury did hear.

[4]The Court cites and discusses United States v. Singer, 710 F.2d 431 (1983) (en banc). I am not sure if citation to a circuit opinion is relevant in applying 28 U.S.C. § 2254(d)(1). The statute seems to limit our consideration to previous Supreme Court cases. However, it may be that a court-of-appeals interpretation of a Supreme Court case, especially when it is the same court en banc, is relevant in determining what a subsequent panel believes that case means. The Court distinguishes Singer on the ground that the trial judge's comments were pervasive throughout the trial. In this

-13-

himself, not to another witness, and was made directly to the jury, not to the witness. I don't see why these differences make a legal distinction. The important thing is that the jury heard the comment, and, in the present case, the testimony of the alleged victim was virtually the only evidence the government offered.

The trial court gave the jury cautionary instructions. This was also done in Quercia, as the Supreme Court's opinion notes.

The trial court explained that it intended only to remind the child witness that she was still under oath. This is a routine aspect of trials. When witnesses who have earlier testified on direct take the stand on rebuttal, they are routinely told that they are still under oath. There is no need to repeat the oath. What happened here went far beyond that, though I accept the trial judge's comments that he did not intend to go beyond it. I have never heard of a judge's making a statement like this in front of the jury.

It is said that the trial court's comments could not have been prejudicial, because they were in the future tense, directed solely to the witness's rebuttal testimony to come, which testimony was peripheral to the main issue in the case, whether the abuse had occurred, and whether defendant had committed it. This explanation won't wash. When the trial court said to the witness that it believed she would tell the truth, it must have had, or thought that it had, some basis for the statement. The basis, most likely, was the impression that the witness had made on the trial court during her direct testimony. Thus, the trial court was saying, in effect,

way, the Court argues, Singer was "worse" than the present case. I was the author of Singer for the Court en banc. I will say, for what it's worth, that Singer, not involving a direct comment on a witness's credibility in front of the jury, is by no means "worse" than the present case. I acknowledge, however, that, even though I wrote Singer, I have no more legal competence to interpret it than any other member of this Court.

that the witness would tell the truth on rebuttal because she had done so as part of the government's case-in-chief.

It is said that the comment was not prejudicial, and the opinion of the Supreme Court of South Dakota, making that finding, is cited in support as a finding of fact. I do not believe that whether a certain comment was prejudicial is a "fact" as that term is used in the law. Prejudice is to be determined from all of the surrounding circumstances. There is and probably can be no direct evidence of the jury's mental reaction to the comment. Rather, we have to look to the words of the comments themselves and to their natural tendency to persuade a juror. If you look at the portion of the Quercia opinion dealing with prejudice, you will find that it is fairly cursory. The Court evidently thought that comments of this kind were nearly always prejudicial, if not literally always.

What is the rule of Quercia? I suggest that the following sentence can be taken as a capsule of the Court's holding: "The influence of the trial judge on the jury is 'necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' " I believe that what happened here is a violation of that rule.

For these reasons, I respectfully dissent.

_____