# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2183

_____

United States of America

*Plaintiff - Appellee*

v.

Dashown Raymond Keys

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: December 14, 2018
Filed: March 22, 2019

_____

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[*] District
Judge.

_____

LOKEN, Circuit Judge.

A jury convicted Dashown Raymond Keys of four counts of aggravated sexual
abuse of a child and two counts of abusive sexual contact of a child, in Indian

_____

[*]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

country, in violation of 18 U.S.C. §§ 1152, 2241(c), 2246(2), 2244(a)(5), and 2246(3). Keys appeals the conviction, arguing the district court[1] abused its discretion by admitting evidence of a prior sexual assault, improperly commenting during one victim's testimony, and limiting the testimony of a defense witness. He further argues the district court abused its discretion in imposing a 540-month prison sentence. Concluding there was no abuse of discretion, we affirm.

## I. Evidentiary Issues.

During the period in question, February 2013 to September 2015, Keys lived in the home of Heidi and Rossi Haynes, Keys's uncle, on the Sisseton-Wahpeton Sioux Tribe's reservation in Agency Village, South Dakota. During most of that period, Keys shared a bedroom with I.C., Heidi Haynes's minor daughter. On many occasions, I.C. and her younger sister, R.C., would invite friends for sleepovers in that bedroom, including J.V. and H.L.

Keys returned to his family in Milwaukee in early January, 2016. A few days later, I.C., then 12 years old, told her mother that Keys had sexually abused her. Heidi took I.C. to the Sisseton hospital emergency room. Law enforcement was notified, and a child abuse investigation began. I.C. told investigators that Keys had sexually abused her beginning in early 2013. J.V. told investigators that Keys had sexually abused her on multiple occasions when she spent the night with I.C. H.L. told investigators that Keys sexually abused her while sleeping over at I.C.'s house. This prosecution followed. The superseding indictment charged Keys with three counts of aggravated sexual abuse and one count of abusive sexual contact with I.C., and with one count of aggravated sexual abuse and one count of abusive sexual contact with J.V.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

At trial, I.C. testified that the abuse began when she was nine years old. It occurred more times than she could count when she and Keys shared a bedroom. The abuse included repeated instances of vaginal touching, attempted digital penetration, oral sex, anal intercourse, and attempted vaginal intercourse. J.V. testified, by marking anatomical exhibits, that Keys pulled her pants down and attempted vaginal and anal intercourse when she stayed overnight in the bedroom Keys and I.C. shared. After a three-day trial, a jury convicted Keys of all six counts of aggravated sexual abuse and abusive sexual contact.

On appeal, Keys argues the district court abused its discretion in making three evidentiary rulings, and the cumulative prejudicial effect of these errors warrants a new trial. We review evidentiary rulings for abuse of discretion. We reverse only "if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion." United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015). "We will not overturn a conviction based on the cumulative effect of trial errors unless there is substantial prejudice to the defendant." United States v. Jewell, 614 F.3d 911, 929 (8th Cir. 2010).

**A. H.L.'s Trial Testimony.** At trial, the government called H.L. as a witness after I.C. testified. Over Keys's objection, H.L. testified that, during a sleep-over with I.C. and R.C. in the shared bedroom, Keys woke her up during the night by "rubbing my bottom," whispering "I love you" in her ear, moving his hand to her front private part, and pressing his private part against her bottom. Keys argues the district court abused its discretion by admitting this testimony under Rules 413 and 403 of the Federal Rules of Evidence. See United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001) (standard of review).

Evidence of prior bad acts is generally not admissible to prove a defendant's character or propensity to commit crime. Fed. R. Evid. 404(b). However, "Congress altered this rule when it adopted Rules 413 and 414 of the Federal Rules of Evidence.

Now, in sexual assault and child molestation cases, evidence that the defendant committed a prior or similar offense may be considered for its bearing on any matter to which it is relevant, including the defendant's propensity to commit such offenses." Gabe, 237 F.3d at 959 (quotation omitted). A prior sexual assault is relevant to a charged offense if it is "committed in a manner similar to the charged offense." United States v. Crow Eagle, 705 F.3d 325, 327 (8th Cir. 2013) (quotation omitted). If relevant, evidence of a prior sexual assault is admissible "unless its probative value is substantially outweighed by one or more of the factors enumerated in Rule 403, including the danger of unfair prejudice." Gabe, 237 F.3d at 959 (quotation omitted). "District courts are given broad discretion in gauging the possibility of unfair prejudice under Rule 403." United States v. Medicine Horn, 447 F.3d 620, 622 (8th Cir. 2006).

Here, evidence of Keys's sexual assault of H.L. was clearly relevant. It was committed in a similar manner and during the same time period as the child sex abuse Keys was charged with committing against I.C. and J.V. All three victims were young girls between the ages of 9 and 12; all testified that Keys touched their anal and vaginal areas with his hands or penis at night in the shared bedroom. See Crow Eagle, 705 F.3d at 328 ("the methods of assault were similar"); United States v. Holy Bull, 613 F.3d 871, 873-74 (8th Cir. 2010); Gabe, 237 F.3d at 959-960 ("almost identical" child sexual abuse committed twenty years before trial admissible).

Keys argues that, regardless of relevance, the district court abused its Rule 403 discretion because the probative value of H.L.'s testimony was substantially outweighed by the danger of unfair prejudice. However, like most relevant Rule 413 evidence, H.L.'s testimony is prejudicial "for the same reason it is probative -- it tends to prove [Keys's] propensity to molest young children." Gabe, 237 F.3d at 960. We have repeatedly held that, under Rule 413, that is not "unfair prejudice." See, e.g., United States v. Horn, 523 F.3d 882, 888 (8th Cir. 2008).

**B. J.V.'s Testimony.** After I.C. and H.L. testified, the government called eleven-year-old J.V. On direct exam, after preliminary questions, government counsel addressed the two charges relating to J.V.:

**Q** . . . J.V. you know why you're here today, right ?

**A** Yes.

**Q** Okay. I want to ask you on those times that you slept over at the house that I.C. and [Keys] stayed at, did anything happen between you and Dashown?

**[Defense counsel]:** Your Honor, I'm going to object to leading.

**The Court:** Overruled.

**Q (By [government counsel])** That means you can answer, J.V. . . . Did something happen between you and Dashown?

**A** (Pause.)

**Q** J.V., can you give a yes or no, please?

**A** Yes.

**Q** Yes, okay. J.V., can you tell the members of the jury what happened between you and Dashown?

**A** (Pause.)

**Q** J.V., can you tell us what happened, please?

**The Court:** Can you try to answer his questions, please?

**A** (Pause.)

**Q** Can you tell us what happened, J.V.?

**A** He touched me.

**Q** How did he touch you?

**A** His private part.

**Q** His private part?

**A** Yes.

**Q** What did his private part touch?

**A** (Pause.)

      **The Court:** Did you understand his question? Try to answer, please.

      [Sidebar conference concerning the next question.]

**Q** J.V., you said that the defendant touched you with his private part, right? That's just a yes or no. Can you give me a yes or no right now, please? Do you remember giving that answer, J.V.?

      **The Court:** J.V., try to answer the questions, so you can get off the stand.

**A** Yes.

**Q** (**By [government counsel]**) Okay. J.V., I'm going to show you what's been marked as Government Exhibit 13 here. Can you take this pen, and can you circle the area that you meant was his private part that touched you?

**A** (Complies.)

At a break in the trial later that day, defense counsel moved for a mistrial "for improper comments by the Court" because "it's encouraging a witness by telling her to answer the questions and get off the witness stand." The district court responded: "After careful consideration, I find that I acted properly . . . . The motion for mistrial is denied."

On appeal, Keys argues the district court erred in denying a mistrial because the court's comment to J.V., "try to answer the questions, so you can get off the stand," deprived Keys of his right to a fair trial because the court "improperly abandoned his neutral and impartial role and injected himself into the trial on behalf of the prosecution." United States v. Lueth, 807 F.2d 719, 727 (8th Cir. 1986). We reject this contention for multiple reasons.

First, we have "always been reluctant to disturb a judgment of conviction by reason of a few isolated, allegedly prejudicial comments of a trial judge." United States v. Bland, 697 F.2d 262, 265 (8th Cir. 1983). Second, there was no immediate objection to this isolated remark, so the district court was deprived of an opportunity to clarify its remark. See United States v. Flying By, 511 F.3d 773, 777 (8th Cir. 2007). Third, the district court did not question the witness or comment on her testimony, as in United States v. Singer, 710 F.2d 431, 436 (8th Cir. 1983) (en banc) (trial unfair where trial judge "injected himself into the trial throughout the entire proceeding").

Fourth, and perhaps most important, the court was attempting to deal with a distressed child testifying in public about a traumatic experience. The Supreme Court has "recognized that a State's interest 'in the protection of minor victims of sex crimes from further trauma and embarrassment' is a 'compelling' one." Maryland v. Craig, 497 U.S. 836, 852 (1990), quoting Globe Newspaper Co. v. Superior Ct. of Norfolk Cty., 457 U.S. 596, 607 (1982). Trial judges have the same compelling interest in minimizing a victim's trauma and embarrassment at trial.

Here, the court interjected only when J.V. struggled with questions "soliciting very sensitive testimony from a child witness." United States v. Butler, 56 F.3d 941, 943 (8th Cir. 1995).[2] In this context, even more than in Alidani v. Dooley, 365 F.3d 635, 641 (8th Cir. 2004), no reasonable juror would have interpreted the court's comment as favoring the prosecution, rather than attempting to calm an eleven-year-old child being asked to describe a sexual crime. Telling a young child witness, "try to answer the questions," is not telling her how to answer the questions. The court's neutrality was confirmed during J.V.'s cross examination, when defense counsel asked a question on this subject, J.V. paused, and the district court commented, "Can you try to answer his question, J.V.?" In its final instructions, the court instructed the jury that "nothing I have said or done during the trial, has been said or done to suggest to you what I think your verdicts should be."

**C. Deon Taylor's Testimony.** Finally, Keys argues the district court violated his constitutional right to present a defense when it limited the testimony of defense witness Deon Taylor regarding (1) a financial dispute between Keys and I.C.'s guardians and (2) Taylor's opinion regarding Keys's motivation for giving I.C. gifts. A defendant's constitutional right to present a defense is subject to limitations based on "concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Never Misses A Shot, 781 F.3d at 1029 (quotation omitted). We review a district court's evidentiary rulings for abuse of discretion; where constitutional rights are implicated, our review is *de novo*. "[W]e will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." United States v. White, 557 F.3d 855, 858 (8th Cir. 2009).

---

[2]The court was advised at sentencing that, shortly after the trial, J.V. tried to kill herself.

1. The district court acted well within its discretion when it prohibited Taylor from testifying about an alleged financial dispute between Keys and I.C.'s guardians. After Taylor testified that he believed Heidi and Rossi Haynes did not want Keys to move out because of the financial help he was providing, the district court sustained an objection to this question: "Did you believe that Dashown's leaving [the Haynes home] had something to do with [I.C.'s] allegations?" Keys argues this evidence was relevant to establish a motive for I.C. to fabricate her claims of sexual assault. But Taylor's opinion as an observer did not establish this improbable theory, which defense counsel vigorously argued but the jury rejected. The district court did not abuse its discretion by excluding Taylor's baseless opinion.

2. After Taylor testified that he observed Keys giving gifts to I.C., the district court overruled the government's relevance objection to whether Taylor believed Rossi and Heidi treated R.C. better than her sister, I.C. However, when defense counsel asked Taylor *why* Keys was buying things for I.C., the government objected that Taylor "does not know what [Keys's] true motives were." The court sustained this objection. Later Keys, the last defense witness, provided an explanation to counter the government's theory that the gifts were "grooming" I.C. for a sexual relationship. On appeal, Keys argues that excluding Taylor's opinion prevented him from presenting "a complete defense to the charges."

Had Keys testified first, Taylor's opinion might have had probative value as corroboration of Keys's explanation for the gifts. But when Taylor testified, there was nothing to corroborate, and it was not improper to exclude his personal opinion of another person's intent. Knowing Keys would testify, defense counsel could have provisionally offered Taylor's opinion as corroboration, or counsel could have recalled Taylor after Keys testified. As the defense did neither, we cannot conclude that excluding this opinion was an abuse of the district court's wide discretion to limit testimony of marginal probative value. Nor did the ruling affect Keys's substantial rights or have more than a slight influence on the verdict.

## II. Sentencing Issues.

At sentencing, the district court overruled defense objections to the Presentence Investigation Report and determined that the advisory guidelines sentencing range was the 30-year statutory minimum to life in prison on four of the six counts of conviction. The court heard victim impact testimony from Heidi Haynes, I.C.'s mother, and considered victim impact statements from J.V. and her mother. The court denied Keys's motion for a downward variance to 30 years but also declined to impose a life sentence. Explaining at length its weighing of the 18 U.S.C. § 3553(a) sentencing factors, the court imposed a 540-month prison sentence.

On appeal, Keys argues the district court abused its sentencing discretion. First, Keys argues the court procedurally erred by failing to adequately explain why it rejected his argument that a lower sentence was required based on the need to avoid unwarranted disparities with similarly situated defendants. This contention is without merit. "We will not sustain a procedural challenge to the district court's discussion of the 18 U.S.C. § 3553(a) sentencing factors by a defendant who did not object to the adequacy of the court's explanation at sentencing." United States v. Maxwell, 778 F.3d 719, 734 (8th Cir.) (citation omitted), cert. denied, 135 S.Ct. 2827 (2015). Here, the district court explicitly responded to Keys's lengthy disparity argument at sentencing, acknowledging its sentencing of other child sex abuse offenders and the need to avoid unwarranted sentencing disparities. Without question, the court provided "substantial insight into the reasons for its determination." United States v. Feemster, 572 F.3d 455, 463 (8th Cir. 2009) (en banc) (quotation omitted).

Second, Keys argues the sentence is substantively unreasonable because the district court failed to "adequately consider and apportion significant weight to sentencing disparities within the District of South Dakota." We have repeatedly declined to require district judges to compare and contrast the defendant being sentenced with allegedly similar prior offenders. "When the argument is, as in this

-10-

case, that the district court's sentence created unwarranted disparities with the sentences imposed on . . . unrelated offenders by . . . different judges, there is no principled basis for an appellate court to say which defendant[s] received the 'appropriate' sentence." United States v. McElderry, 875 F.3d 863, 865 (8th Cir. 2017), quoting United States v. Fry, 792 F.3d 884, 893 (8th Cir. 2015).  Here, the district court's justifications for imposing a 540-month sentence "rest on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts." Feemster, 572 F.3d at 464 (cleaned up).

The judgment of the district court is affirmed.

_____