# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3551

_____

United States of America

*Plaintiff - Appellee*

v.

Paul Henry Cavanaugh

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: October 19, 2021
Filed: April 19, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

SMITH, Chief Judge.

A jury found Paul Cavanaugh guilty of one count of sexual abuse of an incapacitated victim, in violation of 18 U.S.C. §§ 2242(2)(A), 2242(2)(B), and 1153.

On appeal, Cavanaugh challenges one pretrial evidentiary ruling by the district court[1] and one of its directives at trial. He contends that the court's decisions denied him the ability to present a complete defense. We affirm.

## I. *Background*

On March 15, 2018, Cavanaugh hosted a small family gathering at his home on the Spirit Lake Indian Reservation in Fort Totten, North Dakota. The victim, A.L., is the daughter of Cavanaugh's first cousin, H.L., who lived across the street. A.L. referred to Cavanaugh as "Uncle." That night, Cavanaugh, A.L., and others consumed alcohol at Cavanaugh's residence. A.L. fell asleep in one of the home's bedrooms. Attendees Robert and Mary Demarce continued to consume alcohol with Cavanaugh in another part of the home. Later, Mary began to feel sick and went outside through the back door.

Shortly thereafter, Cavanaugh told Robert that he should go outside and check on his wife. When Robert and Mary attempted to re-enter the house, they found the door locked. They knocked on the door and yelled for Cavanaugh to let them back inside, but he did not respond. Unable to get back inside, Robert and Mary walked across the street to A.L.'s mother's house. While the Demarces were gone, Cavanaugh went into the bedroom where A.L. slept and forcibly had sex with her while she remained intoxicated and only semi-conscious.

A.L. awakened with Cavanaugh on top of her in the bed. He had removed her pants, shirt, bra, and underwear. Cavanaugh had removed his own clothing as well and gotten underneath the blanket and began having vaginal intercourse with her. A.L. stated that she could hear Mary outside yelling for Cavanaugh to let her and Robert back inside. Cavanaugh told A.L. not to yell. A.L. resisted and told him to get

___

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

off of her, but he refused. A.L. attempted to push him away, but he held her arms down. A.L. estimated that the sexual assault lasted approximately 20 minutes. After Cavanaugh finished assaulting A.L., he asked "if she was going to be a bad girl." R. Doc. 152, at 5. A.L. told Cavanaugh she did not know what he meant by that question.

At about 7:00 a.m., shortly after the incident, Cavanaugh fell asleep. A.L. quickly dressed and ran across the street to her mother's house. The victim's mother, H.L., reported that A.L. came home crying and wearing only pants and a zip-up sweater, with no underwear, shirt, or bra. A.L. related the attack to her mother stating that she woke up to Cavanaugh raping her and that he had refused to stop. Her mother responded initially with hostility towards A.L. calling her "a mistake, a whore, and a slut." *Id* . A.L. reacted strongly to the trauma of the assault and her mother's words. She attempted suicide by overdosing on a large number of unidentified pills, rendering her unconscious. After discovering A.L. unconscious, her mother called for an ambulance, and A.L. was transported to an emergency room in Devils Lake, North Dakota. There, she received treatment for the overdose, and a rape kit was administered.

Later that same day, a search warrant was executed at Cavanaugh's residence. Authorities collected the remaining clothing that A.L. was wearing prior to the assault. The clothes were found in the bedroom where the sexual assault took place. They also arrested Cavanaugh for unrelated, outstanding warrants. On March 21, 2018, investigators interviewed Cavanaugh.

At first, he denied that the sexual assault had occurred. Cavanaugh stated that everyone left his residence and that he passed out on the couch. Cavanaugh also denied having sexual intercourse with the victim. A DNA laboratory report dated October 18, 2018, however, confirmed that the Y-chromosomal profile collected from A.L.'s vaginal swab during the rape kit examination matched the Y-chromosomal

profile obtained from Cavanaugh's buccal swab sample. Investigators conducted a second interview with Cavanaugh on February 6, 2019. This time, they informed Cavanaugh about the results of the DNA report. Cavanaugh continued to deny any wrongdoing but revised his previous account to state that he could not remember any sexual contact occurring between him and the victim.

Authorities charged Cavanaugh with one count of sexual abuse of an incapacitated victim and one count of aggravated sexual abuse by force. At his jury trial, Cavanaugh again changed his story and admitted to having sexual intercourse with A.L., but he stated that, in his view, it was consensual. The jury convicted Cavanaugh of one count of sexual abuse of an incapacitated victim and acquitted him of the aggravated sexual abuse charge. Cavanaugh appeals, alleging that the district court made two evidentiary errors warranting reversal and a new trial. We disagree and affirm.

## II. *Discussion*

We review the district court's evidentiary rulings for abuse of discretion. *See United States v. Keys*, 918 F.3d 982, 985 (8th Cir. 2019). "We will not overturn a conviction based on the cumulative effect of trial errors unless there is substantial prejudice to the defendant." *Id.* (quoting *United States v. Jewell*, 614 F.3d 911, 929 (8th Cir. 2010)).

### A. *Pretrial Motion*

Federal Rule of Evidence 403 permits the district court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In determining whether evidence should have been excluded under Rule 403, a reviewing court must give great deference to the trial judge who saw and heard the evidence." *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980).

In his first point on appeal, Cavanaugh argues that the district court erred in allowing the government to elicit testimony from A.L. and H.L. regarding A.L.'s suicide attempt. On May 1, 2020, Cavanaugh filed a motion in limine which, in relevant part, urged the district court to prohibit testimony from A.L. and H.L. regarding A.L.'s suicide attempt. Cavanaugh's primary argument was that the testimony lacked sufficient probative value to overcome its potential prejudicial effect on the jury as it determined whether A.L. was sexually assaulted. The district court disagreed, noting in its order

> that potential testimony bears on A.L.'s recall of the events and is relevant to whether she had the capacity to apprise the nature of Cavanaugh's conduct and her ability to decline participation in that conduct. And due to the close temporal proximity of the suicide attempt, the testimony provides full context for the charged crimes.

R. Doc. 101, at 3 (citations omitted).

Cavanaugh argues that there was no need for testimony related to A.L.'s suicide attempt to provide the full context of what transpired. Cavanaugh contends that the evidence only provided minimal context as to the crimes charged, lacked meaningful probative value, and served only to confuse and mislead the jury resulting in unfair prejudice. Cavanaugh further contends that the district court failed to acknowledge obvious ways such testimony could inflame the jury against him. The government responds that A.L.'s overdose, coupled with the alcohol that Cavanaugh gave her, was relevant and probative because it may have "affected her ability to recall events that had transpired prior to the overdose." Appellee's Br. at 23. Specifically, it "may also have affected her ability to relay details to others—importantly, to the examining medical personnel and the investigating agent." *Id*. Moreover, A.L.'s suicide attempt was particularly important for rebutting Cavanaugh's testimony that he and A.L. had engaged in consensual sex.

-5-

The district court adequately addressed Cavanaugh's concern in its order, noting that "the testimony is unlikely to be so provocative as to divert the jury's attention from the central sexual abuse allegation." R. Doc. 101, at 3. Given the close temporal and causal proximity of A.L.'s suicide attempt to Cavanaugh's conduct, evidence of her subsequent behavior was probative and not unfairly prejudicial. *See United States v. Fechner*, 952 F.3d 954, 958 (8th Cir. 2020) ("Rule 403 prohibits evidence that is unfairly prejudicial, not any evidence detrimental to a defendant's case."). Accordingly, we hold that the district court did not abuse its discretion in admitting testimony about A.L.'s suicide attempt.

## B. *Limitation on Cross-Examination*

Second, Cavanaugh avers that his Fifth and Sixth Amendment rights were violated when the district court impermissibly restricted his cross-examination of both A.L. and H.L. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Montgomery*, 635 F.3d 1074, 1089 (8th Cir. 2011). However, where constitutional rights are implicated, our review of a district court's evidentiary rulings are de novo. *United States v. White*, 557 F.3d 855, 857 (8th Cir. 2009). "[W]e will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." *United States v. Gustafson*, 528 F.3d 587, 591 (8th Cir. 2008). We review a district court's decision to limit cross-examination for an abuse of discretion, reversing only if there has been a clear abuse of discretion and a showing of prejudice to the defendant. *United States v. Cody*, 114 F.3d 772, 776 (8th Cir. 1997).

Cavanaugh argues that his inability to ask H.L. about the details of her argument with A.L. prior to A.L.'s attempted suicide denied him the opportunity to present a complete defense. At one point during Cavanaugh's cross-examination of A.L., the following exchange occurred:

Q. [by defense counsel] At what point did you engage your mother?

A. Right when I walked in the house door I had approached her and I had told her and Jeff and Mary.

Q. What did your mother say to you?

A. She basically yelled at me and told me I was a bastard and I was a mistake and to get away from her and that she didn't want to hear it.

Q. Did she call you anything else?

A. No.

Q. Do you recall telling Chief McCloud that she called you anything else?

A. Yes—well, I do, yes.

Q. What did you tell Chief McCloud she called you?

A. That I was a bastard, I was a mistake and that she hated me.

Q. She call you a slut?

A. Yes. She still does to this day.

Q. She call you a whore?

A. Yes. She calls me all the above.

Q. Did she say you sleep with men for meth?

A. Yes, she does.

Q. How'd that make you feel?

A. It made me feel upset, made me feel unwanted. Can we stop talking about this because this has nothing to do with what happened to me?

R. Doc. 168, at 64–65.

Cavanaugh notes that at this point, the district court took a break, excused the jury, and inquired if counsel had any issues. The government was concerned, based on the direction of the testimony referenced above, that Cavanaugh was attempting to elicit testimony about A.L.'s other sexual relationships. The government noted that Cavanaugh had not made a motion prior to trial to do this and thus any attempt to do so at trial should be forbidden. The district court then proceeded to limit Cavanaugh's counsel's cross-examination of A.L. After reading back the aforementioned testimony, the district court informed Cavanaugh:

> What I will do is I will warn counsel that getting up to that line again will not be tolerated and I will consider the motion by the United States in this fashion and will caution counsel not to get into the victim's sexual behavior. Cross-examination, it's very hard to control the answer that a witness gives on cross. I'm not misunderstanding that at all but I would just ask that any line of questioning not delve into that and I'll be watching for it and for appropriate objections if it gets to that point.

R. Doc. 168, at 68–69.

Cavanaugh contends that the district court impermissibly restricted his cross-examination after allowing the government "to frame the narrative of A.L.'s suicide attempt during its direct examination of H.L., [because] Cavanaugh was hamstrung from seeking testimony on the full context [of] what truly happened, testimony that could have gone to the credibility of both A.L., and H.L., as witnesses." Appellant's

-8-

Br. at 29. Cavanaugh asserts that our holding in *United States v. Zephier*, 989 F.3d 629, 637–38 (8th Cir. 2021), supports his argument that he was deprived of the opportunity to present a complete defense.

In *Zephier*, we held that the district court abused its discretion by excluding rebuttal testimony about whether the victim had previously been sexually assaulted. *Id.* at 636–37. We concluded that the defendant was deprived of a complete defense, which was not harmless beyond a reasonable doubt. *Zephier*, 989 F.3d at 637–38.

The facts distinguish this case from *Zephier*. Here, the district court did not make any ruling precluding Cavanaugh from questioning H.L. about her fight with A.L. Cavanaugh's contention that the district court's warning alone restricted his ability to thoroughly question H.L. is thin. If Cavanaugh felt restricted in his ability to question H.L., he could have asked the district court for clarification or objected to the limiting instruction when given by the district court during his cross-examination of A.L. *See Keys*, 918 F.3d at 987 (noting that where defendant made no immediate objection to the district court's comment, the district court was deprived of an opportunity to clarify its remark). Cavanaugh did not object or seek clarification.

The information Cavanaugh sought to solicit through cross-examination of H.L. was ultimately presented to the jury. Between Cavanaugh's cross-examination of A.L. and other witnesses, the jury heard the factual details of the fight between A.L. and H.L., and Cavanaugh presented his alternative theory for A.L.'s attempted suicide. Cavanaugh was not denied a complete defense during his trial by the court's directions on cross-examination. The jury assessed the credibility of the witnesses, considered all the evidence admitted, applied the law and resolved any conflict in the evidence in reaching its determination. Evidence pertaining to A.L.'s suicide attempt was in the record, and Cavanaugh made his credibility challenge.

Ultimately, the jury acquitted Cavanaugh of aggravated sexual abuse, but it found him guilty of abuse of an incapacitated victim. That the jury convicted him of only one count but not the other indicates that it was able to make an appropriate determination based on the evidence. "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." *United States v. Harrison*, 671 F.2d 1159, 1162 (8th Cir. 2006) (per curiam). Its determinations are "virtually unreviewable on appeal." *United States v. Hernandez*, 569 F.3d 893, 897 (8th Cir. 2009) (internal quotation marks omitted).

III. *Conclusion*

Accordingly, we affirm the district court.

_____