# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2805

_____

United States of America,       *
                                    *
       Appellee,           *
                                    *   Appeal from the United States
     v.                      *   District Court for the
                                    *   Western District of Missouri.
Trae L. Winn,             *
                                    *
       Appellant.         *

_____

Submitted: April 12, 2010
Filed: December 9, 2010

_____

Before RILEY, Chief Judge, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Trae Winn of possession with intent to distribute less than 50 kilograms of marijuana and use or carriage of a firearm during and in relation to a drug trafficking offense. Winn appeals, contesting an evidentiary ruling, the jury instructions, and the sufficiency of the evidence supporting his firearm conviction. We affirm.

I.

At around 11:00 a.m. on March 20, 2008, Winn was involved in a car chase through a neighborhood in Kansas City, Missouri. A maroon or purple Pontiac chased Winn's red Camaro at speeds that exceeded sixty miles per hour. During the chase, one of the Pontiac's occupants fired a gun toward Winn and his Camaro. Winn's car struck a GMC pickup truck that was not involved in the chase, injuring the pickup's driver.

After the collision, Winn exited his wrecked car and fired a .45 caliber semiautomatic pistol toward the Pontiac. One of the passengers in the Pontiac returned fire, and the Pontiac then fled. No one was injured by the gunfire, but shots hit and damaged nearby buildings, a parked car, and a residential garage. Winn remained at the scene and waited for police to arrive. He removed the empty magazine from his firearm and placed the magazine, firearm, and paperwork for the firearm on the roof of his car.

Officer Erwin Brown of the Kansas City Police Department witnessed the Pontiac pursue Winn's car. Brown advised his dispatcher of the car chase. He lost sight of the vehicles until he came upon the collision between Winn's car and the pickup. Officer Christopher Defreece heard Brown's call over the radio and arrived at the accident scene shortly thereafter. Defreece observed Winn's firearm on the roof of the Camaro and then placed Winn in handcuffs.

Defreece conducted a search of Winn's person before placing him in a patrol wagon. Defreece discovered a holster and double magazine holder secured to Winn's torso by a leather belt. According to Defreece's testimony, a double magazine holder stores magazines used to reload the firearm with ammunition. Police also found a magazine that contained ten live rounds of ammunition lying near Winn's car.

Winn provided police with a statement detailing his account of the incident. He said that the Pontiac approached him at an intersection, and that he grew nervous when one of the occupants pulled a hood over his head. Winn turned his car to get away from the Pontiac, but a passenger in the Pontiac began firing at him. After Winn crashed into the pickup, the Pontiac's occupant fired more shots in Winn's direction, and Winn acknowledged that he returned fire. Winn was released from police custody after providing his statement.

During his interview with police, Winn granted written consent for police to search his Camaro, which had been taken to a city tow lot. A search uncovered a cellular telephone and a plastic shopping bag, which was hidden underneath the front passenger seat. The shopping bag held three zipper storage bags of marijuana, multiple empty baggies, and a digital scale. The three zipper bags contained 80.07 grams, 34.92 grams, and 46.54 grams of marijuana, for a total of 161.53 grams. A grand jury indicted Winn for possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and use or carriage of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.

At trial, in addition to evidence of the car chase, the subsequent search of Winn's person and vehicle, and Winn's post-arrest statements, the government presented testimony from Jennifer Howard, a senior criminalist for the Kansas City Police Department. Howard testified about her analysis of samples taken from the evidence found in Winn's vehicle after the March 2008 incident. She said that Winn was a possible contributor to the genetic mixture found on the shopping bag that contained the three zipper bags of marijuana, baggies, and digital scale, and that the probability that his genetic profile was included randomly was one in thirteen. As to the zipper bags themselves, Winn was excluded as a contributor to the genetic mixture on one bag; another bag contained insufficient genetic information for testing; and Winn was a possible contributor to the genetic information on the third bag. The

probability of the random inclusion of Winn's genetic profile on the third bag was one in forty-thousand. Howard testified that Winn was a "clear major contributor" to the genetic information on the digital scale; the probability of random inclusion was a minuscule one in eighteen quintillion.

Prior to trial, the district court[1] ruled that the government would be permitted to introduce certain evidence pursuant to Federal Rule of Evidence 404(b). During trial, the government presented evidence that Winn was arrested on August 28, 2007, after he fled from a traffic stop. Law enforcement officers found $706 on his person, a digital scale with a "green leafy substance-type residue" in his vehicle, and a loaded .45 caliber firearm and a bag containing baggies and 217 grams of marijuana along the route of Winn's flight. The district court[2] adhered to the pretrial ruling, and admitted the evidence under Rule 404(b) as relevant to Winn's knowledge and intent on the charged drug trafficking offense.

In support of Winn's defense, Rachel Jones, the mother of Winn's two children, testified that Winn did not knowingly possess the marijuana found inside the Camaro. According to Jones' testimony, Winn stayed at her apartment on occasion, including during the morning of March 20, 2008. A few hours before the car chase and shootout, according to Jones' testimony, she found marijuana in her apartment. Jones purportedly feared eviction for being found with marijuana, and she had asked Winn not to store his marijuana in her apartment. Jones claimed that unbeknownst to Winn, who was asleep at the time, she placed the marijuana underneath the front passenger seat of Winn's Camaro, where police later found it.

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri, who presided at trial and at sentencing.

At the close of evidence, Winn filed a motion for judgment of acquittal, asserting that the evidence did not show that Winn knowingly possessed marijuana, or that Winn's use of a firearm in the shootout was connected to drug trafficking. The district court denied the motion. The jury returned a guilty verdict on both counts, and the district court denied Winn's motion for a new trial.

II.

A.

Winn first contends that the district court erred by admitting evidence of the marijuana and firearm discovered after his August 2007 arrest. We review the district court's decision to admit evidence under Rule 404(b) for abuse of discretion. *United States v. Trogdon*, 575 F.3d 762, 766 (8th Cir. 2009).

Rule 404(b) prohibits admission of evidence of an accused's prior bad acts to prove character or propensity to commit crime, but it does not exclude such evidence for other purposes, such as to prove knowledge or intent. *Id.* Evidence of prior acts is admissible under Rule 404(b) if (1) it is relevant to a material issue; (2) it is similar in kind and close in time to the charged offense; (3) it is supported by evidence such that a jury could reasonably find that the defendant committed the prior act; and (4) its probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Jewell*, 614 F.3d 911, 922 (8th Cir. 2010).

Winn argues that the evidence of the August 2007 arrest was not similar in kind to the March 2008 offense. But each incident involved possession, while in a vehicle, of a significant quantity of marijuana, a firearm, a digital scale, and baggies. We thus conclude that the district court did not abuse its discretion by determining that the instant allegations are similar in material respects to the circumstances of Winn's August 2007 arrest.

Winn also claims that the government failed to present sufficient evidence that he possessed the marijuana and firearm found after his 2007 arrest. To admit evidence under Rule 404(b), the district court need only determine that a reasonable jury could find by a preponderance of the evidence that the defendant committed the prior act. *Huddleston v. United States*, 485 U.S. 681, 685 (1988); *United States v. Stenger*, 605 F.3d 492, 500 n.4 (8th Cir. 2010). Law enforcement officers testified that Winn was the driver of the vehicle that fled from the traffic stop, that Winn had on his person a key and key fob that matched the vehicle, and that the marijuana and firearm were discovered along the route by which vehicle fled. The government also presented evidence that Winn was a possible contributor of genetic material found on the firearm, although that evidence was not conclusive, and evidence that Winn possessed tools of the drug trade – a large amount of currency on his person, and a digital scale in the vehicle. This is sufficient to support a finding by a preponderance of the evidence that Winn knowingly possessed the marijuana and firearm, and that he intended to distribute the drugs.

Finally, Winn contends that the probative value of the evidence of his prior arrest was substantially outweighed by the danger of unfair prejudice. The district court, in its pretrial ruling on the issue, carefully considered the risk of unfair prejudice, and excluded evidence that Winn possessed another drug, in addition to the marijuana, when arrested. The court also addressed the possible prejudicial effect of the evidence by instructing the jury to consider the evidence of the August 2007 arrest only in deciding whether Winn knew of the marijuana in his vehicle and intended to distribute it. We conclude that the district court did not abuse its discretion by admitting evidence of Winn's August 2007 arrest.

B.

Winn next challenges the jury instructions on the firearm count. The indictment charged that Winn "used or carried" a firearm "during and in relation to" a drug

trafficking offense. This is one of two distinct offenses defined by 18 U.S.C. § 924(c)(1)(A). The second offense is "possession" of a firearm "in furtherance of" a drug trafficking offense. "Use" or "carry" requires more than simple "possession," *see Bailey v. United States*, 516 U.S. 137, 143 (1995), and the "during and in relation to" language for the use or carriage offense is a slightly lesser standard than the "in furtherance of" for the possession offense, *United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir. 2006), so the distinction between the two offenses is not without a difference. *See United States v. Brown*, 560 F.3d 754, 766-67 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 2356 (2010); *United States v. Kent*, 531 F.3d 642, 654 (8th Cir. 2008). Nonetheless, the government proposed, and the district court adopted, some jury instructions that referred to the uncharged possession offense.

Winn focuses on Instructions No. 2 and No. 20. Instruction No. 2 was a preliminary instruction given to the jury before the government opened its case. The instruction stated that it was intended to assist the jury in following the evidence, but it incorrectly labeled the offense for which Winn was charged as "possessing a firearm in furtherance of a drug trafficking crime." The instruction also explained that an element of that offense is that the defendant "knowingly possessed the firearm in furtherance of" a drug trafficking crime.

Instruction 20, the verdict directing instruction given at the end of the trial, also incorrectly labeled the charged offense as "possessing a firearm in furtherance of a drug trafficking crime." Unlike Instruction 2, however, the verdict director correctly stated that the government was required to prove that Winn knowingly used or carried a firearm during and in relation to a drug trafficking offense.

Winn did not object to these instructions before the district court, so we review only for plain error. *Kent*, 531 F.3d at 655. To gain relief, Winn must show an error that is clear or obvious under current law, and he must demonstrate that the error affected his substantial rights and seriously affected the fairness, integrity, or

reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-34 (1993).

Winn argues that the district court committed plain error, because the confusion in the instructions between the two separate § 924(c) offenses likely led the jury to believe that he could be convicted for *possessing* a firearm *during and in relation to* a drug trafficking offense, rather than for *using or carrying* a firearm during and in relation to a drug trafficking offense. In evaluating a challenge to a jury charge, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378 (1990) (internal quotation omitted). We consider whether there is a "reasonable likelihood" that the jury instructions, taken as a whole, misled the jury to convict the defendant based on an incorrect standard. *Id*. at 380; *United States v. Sherman*, 440 F.3d 982, 987 (8th Cir. 2006).

We conclude that although some of the jury instructions included incorrect language, there is no such reasonable likelihood here. The key final marshaling instruction, which directed the jury how to reach a verdict, correctly recited the elements of the use or carriage offense that was charged in the indictment. The instruction incorrectly described the offense in an introductory sentence, but in listing the elements, it correctly stated that the government must prove that "the defendant knowingly used or carried a firearm during or in relation to [a drug trafficking] crime." The instruction also defined both "used a firearm" and "carried," thus focusing the jury's attention on the need to consider whether Winn committed these acts.

Although Instruction No. 2 erroneously listed the elements of the uncharged possession offense, this preliminary instruction was intended merely to help jurors follow the evidence during trial. Another preliminary instruction, Instruction No. 1, recited correctly that Winn was charged with using and carrying a firearm during and

in relation to a drug trafficking offense. Final Instruction No. 17, which was given at the end of the trial along with the verdict director, also recited correctly the offense charged in the indictment. In total, therefore, the jury was instructed three times on the correct elements of the charged use or carriage offense, including once in the final marshaling instruction. It is not reasonably likely that the jury disregarded these instructions and followed instead a preliminary instruction or an introductory sentence in the marshaling instruction. *See Boyde*, 494 U.S. at 381 ("Differences among [jurors] in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."). We therefore conclude that the jury instructions, taken as a whole, did not erroneously define the elements of the charged offense.

C.

Winn's final argument is that the district court should have granted a judgment of acquittal on the firearm charge. Winn contends that the evidence was insufficient to establish that he used a firearm "during and in relation to" a drug trafficking offense, because the evidence does not explain why the individuals in the Pontiac chased him and shot at him. According to Winn, the pursuit could have been unrelated to his possession of a large amount of marijuana, and he could have used or carried his firearm for reasons unrelated to trafficking drugs. We review the district court's denial of the motion for judgment of acquittal *de novo*, reversing only if no reasonable jury could have found Winn guilty beyond a reasonable doubt. *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir. 2010).

We conclude that there was sufficient evidence to support the verdict. The "during and in relation to" language in § 924(c)(1)(A) requires proof that a firearm facilitated or had the potential to facilitate a drug trafficking offense. *Smith v. United States*, 508 U.S. 223, 238 (1993). The jury rejected Winn's defense on the marijuana

possession charge, and found that Winn knowingly possessed the drugs found in the Camaro. In addition to the marijuana, Winn had a firearm in his vehicle and a holster and ammunition strapped to his torso. This court has "long recognized the role of firearms in protecting drugs or drug proceeds," *United States v. Espinosa*, 300 F.3d 981, 984 (8th Cir. 2002), and a jury reasonably could conclude that Winn carried the firearm with him in the vehicle to protect his marijuana. The jury also reasonably could infer that Winn discharged, and thus "used," the firearm in a shootout with individuals in a dispute related to Winn's trafficking in marijuana. Either finding is supported by the evidence and is sufficient to sustain the verdict.

*        *        *

The judgment of the district court is affirmed.

_____

-10-