United States Court of Appeals
For the Eighth Circuit
No. 20-1391

United States of America

*Plaintiff - Appellee*

v.

Stanley Patrick Weber

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Rapid City
_____

Submitted: December 18, 2020
Filed: February 10, 2021
_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Stanley Weber of five counts of aggravated sexual abuse, in violation of 18 U.S.C. §§ 2241(c), 2246(2), and 1152, and three counts of sexual abuse of a minor, in violation of 18 U.S.C. §§ 2243(a), 2246(2), and 1152. The

district court[1] sentenced Weber to life imprisonment. Weber appeals, claiming the district court erred when it denied his motion to suppress and abused its discretion when it admitted testimony from three witnesses under Federal Rules of Evidence 413 and 414, including the prior testimony of one witness under Federal Rule of Evidence 804(b)(1). We affirm.

## I.    BACKGROUND

Weber was a pediatrician employed by the Indian Health Service ("IHS"). Between 1992 and 1995, Weber served on the Blackfeet Reservation in Browning, Montana. He moved to the Pine Ridge Reservation in South Dakota in June 1995 and continued with the IHS until his resignation on May 16, 2016. Weber was federally indicted in the District of South Dakota on February 22, 2017. The indictment charged ten counts, consisting of five counts of aggravated sexual abuse, one count of sexual abuse, and four counts of sexual abuse of a minor. A second superseding indictment returned on September 10, 2019, included an additional count of aggravated sexual abuse and an additional count of sexual abuse of a minor.

While the indictment was pending in South Dakota, Weber was indicted in the District of Montana on five counts of aggravated sexual abuse of a child, attempted aggravated sexual abuse of a child, attempted sexual abuse of a minor, and abusive sexual contact of a minor. The Montana case was tried first and Weber was convicted on four counts related to victims RFH and GRC.

Two days after the indictment in South Dakota, Special Agent Curt Muller, who was employed by the United States Department of Health and Human Services, sought a warrant to search Weber's residence. Special Agent Muller prepared a 30-

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

page affidavit in support and attached a four-page list of the items to be seized. In describing the items to be seized, the search warrant neither specified the items nor incorporated by reference the affidavit or attachments. Rather, the warrant identified the person or property to be seized simply as "evidence of a crime."

When Weber's residence was searched on February 28, 2017, law enforcement seized a variety of electronic devices and paper documents, including multiple passports bearing Weber's likeness and signature. Weber moved to suppress the evidence obtained during the search, alleging the warrant was invalid because it failed to satisfy the particularity requirement of the Fourth Amendment. The district court denied Weber's motion.

Prior to the trial, the court granted the government's motion to dismiss one of the aggravated sexual abuse counts. Approximately a month before trial, the government gave notice that it intended to call six witnesses to testify about Weber's previous sexual abuse. Weber objected and the court, after considering the government's proffered witnesses, allowed RFH, FSE, and GRC to testify. At the time of trial, however, GRC could not be located so the court admitted, over Weber's objection, GRC's prior testimony from the Montana trial. During trial, the court granted the government's motion to dismiss two of the counts and it also granted a judgment of acquittal as to another count. The jury convicted Weber on eight counts and the court sentenced Weber to the maximum term of imprisonment on each count. The sentence imposed consisted of five life sentences and three terms of 180 months, all to run consecutive to each other and all to run consecutive to the sentence imposed in the District of Montana case.

## II.    DISCUSSION

Weber asserts three claims on appeal: First, the district court erred in denying his motion to suppress; second, the district court abused its discretion in admitting

testimony from three witnesses under Rules 413 and 414; and, third, the district court abused its discretion in receiving GRC's prior testimony under Rule 804(b)(1).

### A. Weber's Motion to Suppress

In reviewing the denial of a motion to suppress evidence, we review the district court's conclusions of law *de novo*. United States v. Szczerba, 897 F.3d 929, 936 (8th Cir. 2018), cert. denied, 139 S. Ct. 1544 (2019). The district court determined that the search warrant did not violate the particularity clause of the Fourth Amendment, and that, even if it did, suppression was not the appropriate remedy because the good-faith exception applied. See United States v. Leon, 468 U.S. 897 (1984). While we doubt that a search warrant that neither identifies the items to be seized nor incorporates an affidavit that might arguably cure the deficiencies meets the Fourth Amendment's particularity requirement, we need not reach that question (or the question of whether the Leon good-faith exception applies). The record makes plain that any error in admitting the evidence was harmless beyond a reasonable doubt.

In certain situations, errors "so unimportant and insignificant" may, entirely consonant with the Constitution, be deemed harmless. Chapman v. California, 386 U.S. 18, 22 (1967). In order to be found harmless, the appellate court must express a belief that the error "was harmless beyond a reasonable doubt." Id. at 24. The Supreme Court long ago applied the harmless error doctrine to violations of the Fourth Amendment. See Chambers v. Maroney, 399 U.S. 42, 52–53 (1970).

The evidence obtained pursuant to the warrant that was admitted at trial consisted of copies of three passports bearing Weber's likeness and signatures and Special Agent Muller's testimony that he located letters from a victim, PTB, to Weber during the search. The copies of the passports were received into evidence for the purpose of identifying Weber. This evidence was cumulative and insignificant as

numerous witnesses identified Weber from the witness stand. Special Agent Muller's statement about letters from PTB presents a closer question. Before Special Agent Muller testified, PTB had already testified and told the jury that he had sent letters to and received letters from Weber. Some letters from Weber to PTB, obtained from sources unrelated to the search, had already been received into evidence before Special Agent Muller testified. Special Agent Muller's reference, at most a glancing one, to letters never received into evidence added little, if anything, to the record. More importantly, the letters in question were never mentioned during the government's closing arguments. In light of the passing nature of the reference, its limited significance, and the otherwise overwhelming evidence of guilt, we have no difficulty concluding the admission of the evidence in question was harmless beyond a reasonable doubt. See United States v. Stefanyuk, 944 F.3d 761, 763 (8th Cir. 2019) (concluding error was harmless when evidence obtained from allegedly defective search "did not sufficiently influence the jury").

### B. Testimony from Rule 413 and 414 Witnesses

Weber asserts the district court abused its discretion when it admitted testimony under Rules 413 and 414. Specifically, Weber argues that the district court improperly balanced the prejudicial and probative impact of the three witnesses' testimony in violation of Federal Rule of Evidence 403. We accord the district court's balancing "great deference," United States v. Crow Eagle, 705 F.3d 325, 328 (8th Cir. 2013) (per curiam) (citation omitted), and review its evidentiary rulings for abuse of discretion, United States v. Coutentos, 651 F.3d 809, 819 (8th Cir. 2011).

In criminal cases in which the defendant is accused of sexual assault, evidence of a prior sexual assault is generally admissible under Rules 414 and 413 "unless its probative value is substantially outweighed by one or more of the factors enumerated in Rule 403, including the danger of unfair prejudice." United States v. Keys, 918 F.3d 982, 986 (8th Cir. 2019) (quoting United States v. Gabe, 237 F.3d 954, 959

(8th Cir. 2001)). This court has noted a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997). The district court here considered the relevant rules and case law and properly weighed the probative value of the proposed testimony against the potential unfair prejudice to Weber. The record does not demonstrate any improper balancing by the district court or unfair prejudice to Weber.

Given the similarities between the Rule 413 and 414 testimony and the testimony from the four victims of the conduct charged in this case, the Rule 413 and 414 testimony had substantial probative value. See Keys, 918 F.3d at 986 (explaining that a prior sexual assault is relevant if it shares similarities to the charged conduct). It established Weber's propensity to molest young boys in his medical care and young boys invited to his house. The abuse of nearly all of the victims that testified started during a medical examination at an IHS facility, where Weber abused his position as a pediatrician, and continued thereafter for some time. The probative value of the evidence was perhaps even more substantial in this case than in other cases because Weber advanced a theory of defense that he had been the victim of a conspiracy among some witnesses since he was an outsider in the Pine Ridge community. The Rule 413 and 414 testimony rebutted this defense, as these witnesses came from an entirely different community many miles removed from the Pine Ridge witnesses.

We are unconvinced by Weber's arguments that the testimony in question was unfairly prejudicial. Weber's concern that he was convicted because of his prior bad acts arises any time witnesses testify pursuant to Rules 413 and 414. We have previously concluded that Weber's concern does not rise to the level of unfair prejudice. See Keys, 918 F.3d at 986; United States v. Hollow Horn, 523 F.3d 882, 888 (8th Cir. 2008). To constitute unfair prejudice, the evidence must create "an undue tendency to suggest decision on an improper basis." Gabe, 237 F.3d at 960 (quoting United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir. 1994)). Evidence of

propensity admitted under Rules 413 and 414 is not an "improper basis" upon which a jury could rely, and thus not unfairly prejudicial in this case. In addition, the potential for unfair prejudice was greatly reduced where, as here, the district court gave a limiting instruction. <u>See</u> <u>Hollow Horn</u>, 523 F.3d at 889. To the extent that Weber claims the district court abused its discretion by allowing the testimony of multiple witnesses under Rules 413 and 414, we have determined that three is not an unfairly prejudicial number. <u>See</u> <u>Crow Eagle</u>, 705 F.3d at 328; <u>United States v. Carter</u>, 410 F.3d 1017, 1021–22 (8th Cir. 2005).

### C.    GRC's Prior Testimony

Finally, Weber asserts the district court abused its discretion when it admitted GRC's prior testimony from the Montana trial under Rule 804(b)(1) on the ground that it was difficult for the jury to evaluate GRC's credibility from a cold transcript. This reasoning is an attack on the policy behind Rule 804(b)(1), not an argument that the Rule was improperly applied. Whenever Rule 804(b)(1) testimony is admitted, it is more difficult for the jury to evaluate credibility than when the witness is present in court. Rule 804(b)(1) represents a compromise and is premised on a preference for admitting prior testimony over a complete loss of the evidence. <u>See</u> Fed. R. Evid. 804 advisory committee's note to 1972 proposed rule. The district court did not abuse its discretion by admitting GRC's prior testimony from the Montana trial under Rule 804(b)(1).

### III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____