# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1581
_____

United States of America

*Plaintiff - Appellee*

v.

Myron Lee Brandon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Western

_____

Submitted: January 11, 2023
Filed: April 6, 2023

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Myron Lee Brandon was convicted by a jury of two counts of kidnapping and two counts of transporting a minor across state lines for sexual purposes. He now appeals his conviction, challenging several of the district court's[1] rulings. These

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

include the exclusion of evidence of the victims' prior sexual activity, the admission of prior misconduct evidence, the admission of a prior sex-offense conviction, the rejection of Brandon's requested jury instructions, and the denial of his motion for a new trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

"We recite the facts in the light most favorable to the jury's verdict." United States v. Heredia, 55 F.4th 651, 654 (8th Cir. 2022) (citation omitted).

On the night of June 21, 2003, Sara Sevey and Sharyce Smith were abducted in downtown Omaha, Nebraska. Sevey was 14 at the time and Smith was 15. A man approached them while they were near a gas station and offered money for sex. The girls agreed to get in his truck, just wanting a ride. The man drove them around the surrounding area for some time, crossed a bridge, and eventually ended up in a field near a lake. The man then tied Sevey and Smith to his truck with rope and sexually assaulted them at knifepoint. During the assault, the man burned the girls on their breasts with a cigarette lighter, and he took their undergarments and placed them in a bag. After the assault, the man began pouring gasoline around the truck. Sevey and Smith managed to escape, and they ran across the field to a nearby highway, where they were picked up by a young couple.

Chris West and Marcy Woodard, both 18 years old at the time, were driving northbound on Interstate 29 near Glenwood, Iowa, in the early morning hours of June 2003 when they saw Sevey and Smith, sparsely clothed and visibly distraught, on the roadside. They stopped to help the girls, who were dirty, bruised, and in a state of shock. The couple drove the girls back to downtown Omaha and dropped them off at an apartment building—the home of Sevey's sister. Sevey's sister eventually called the police, and Sevey and Smith were taken to a hospital in Council Bluffs, Iowa, where they were examined and were interviewed by investigators about the assault. The girls reported being picked up by a white male with blonde hair, of moderate-to-short height, overweight, and driving a black pickup truck. A

-2-

laboratory later identified an anonymous male DNA profile on Smith's vaginal swab. Sevey's kit had only oral swabs, and no foreign DNA profile was identified.

For years, Sevey and Smith's case remained unsolved. Then, in February 2020, the Iowa Division of Criminal Investigation (DCI) laboratory reported a possible DNA match for the vaginal swab collected from Smith. After law enforcement executed a search warrant for a buccal swab, the DCI lab confirmed a DNA match for Myron Lee Brandon based on a statistical probability of one out of 1.9 nonillion.[2] Further investigation confirmed that Brandon matched the profile provided by the victims: white male, blonde hair, moderate-to-short height, overweight, and driving a black truck. Investigators located a 2003 mug shot of Brandon in which he had dark blonde hair. A 2003 traffic citation also confirmed that Brandon was driving a black Ford truck at the time. Further, investigators determined that Brandon lived adjacent to Interstate 29 in rural Mills County, Iowa, near where Sevey and Smith were picked up by West and Woodard.

On May 12, 2020, Brandon was indicted by a federal grand jury and charged with two counts of kidnapping, in violation of 18 U.S.C. § 1201(a) and (g), and two counts of transportation of a minor across state lines for sexual purposes, in violation of 18 U.S.C. § 2423(a). Before trial, both Brandon and the Government filed several evidentiary motions. As relevant here, the Government filed motions in limine seeking to exclude evidence of the victims' prior sexual behavior, including evidence of prior prostitution, under Federal Rule of Evidence 412. Brandon sought to admit this evidence via Rule 412's exception for "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). Brandon also filed a motion in limine to exclude evidence of his prior misconduct and convictions under Rules 404(b) and 413. The district court denied Brandon's motions to admit evidence of the victims' prior sexual behavior under Rule 412 and to exclude prior misconduct and convictions under Rules 404(b) and 413, and it granted the Government's motion to exclude evidence of the victim's prior sexual

_____

[2]A nonillion is the numeral one followed by 30 zeros.

-3-

behavior under Rule 412. In anticipation of trial, Brandon also filed proposed jury instructions which included, as an element of the transportation-of-a-minor charges, that the defendant had to know or believe that the victims were under 18.

Jury trial commenced in October 2021. At the close of evidence, the Government moved the district court to prevent Brandon from arguing in closing argument that Sevey and Smith were prostitutes and had connections to a pimp, thus providing an alternative explanation for the assault. The district court ruled that defense counsel could not use the term "pimp" or discuss "prior or subsequent prostitution" during closing argument but could argue that prostitution "was going on at the time of this incident" or that someone else caused the victims' injuries. Before reading the final jury instructions, Brandon again requested additional instructions on a knowledge-of-age element for the transportation-of-a-minor charges, as well as additional consent instructions for the kidnapping charges. The district court denied both requests.

The jury returned a verdict finding Brandon guilty on all counts. Brandon sought a judgment of acquittal under Federal Rule of Criminal Procedure 29 and, alternatively, a new trial under Federal Rule of Criminal Procedure 33, but the district court denied the motions. The district court then sentenced Brandon to 405 months' imprisonment on each count, to be served concurrently, followed by 120 months' supervised release. Brandon now appeals his conviction.

II.

Brandon challenges his conviction on several grounds. First, he argues that the district court violated his constitutional right to present a complete defense by excluding evidence of the victims' prior sexual behavior under Rule 412. Second, he argues that the district court erred by rejecting his requested jury instructions on both the kidnapping charges and the transportation-of-a-minor charges. Third, Brandon argues that the district court erroneously admitted two instances of his prior misconduct under Rule 404(b). Fourth, Brandon argues that the district court erred

-4-

by admitting evidence of a prior sex offense under Rule 413. Fifth, Brandon argues that the district court erred by rejecting his motion for a new trial.[3] We address each argument in turn and conclude that the district court committed no error.

A.

We begin with Brandon's argument that the district court improperly excluded evidence of the victims' prior sexual behavior. In sex-offense cases, Rule 412 prohibits the admission of evidence offered "to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). However, this prohibition is subject to three narrow exceptions. See Fed. R. Evid. 412(b)(1). Brandon argues that one applies here: "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). Pursuant to this exception, Brandon sought to introduce evidence of the victims' prior prostitution as the foundation for an alternative explanation of the physical evidence tying Brandon to the alleged crimes. By refusing to admit this evidence, Brandon argues that the district court violated his constitutional right to present a complete defense. "We review a district court's evidentiary rulings for abuse of discretion. However, where constitutional rights are implicated, our review of a district court's evidentiary rulings are de novo." United States v. Cavanaugh, 30 F.4th 1139, 1142 (8th Cir. 2022) (citation omitted). Because Brandon argues that his constitutional rights were violated, we review the district court's ruling de novo.

The evidence linking Brandon to the kidnapping and transportation of Smith and Sevey is largely circumstantial. The primary physical evidence in this case is the DNA match on Smith's vaginal swab along with the victims' physical description of their assailant. While the DNA match to Brandon is strong—one in 1.9 nonillion—expert testimony at trial confirmed that sperm cells can survive in a vaginal tract for up to five days. In preparation for trial, Brandon sought to put

---

[3]Brandon does not appeal the denial of his motion for judgment of acquittal.

forward an alternative theory of the case to explain the physical evidence: Brandon had sex with Smith prior to the assault alleged here but within the five-day window for detecting DNA on a vaginal swab; the sex was pursuant to a prostitution agreement, but Brandon did not pay; because they did not receive payment, Smith and Sevey were assaulted by their "pimp," who stranded them on the interstate in Iowa; Smith and Sevey then fabricated an explanation for the circumstances rather than implicate the pimp, whom they felt bound to protect.

To support his alternative theory of the case, Brandon sought admission of evidence of Smith and Sevey's prior prostitution. Specifically, he sought to introduce (1) Smith's June 22, 2003 statement to police that Sevey has previously had sex for money and was trying to do so on the night of the incident and (2) Sevey's June 22, 2003 statement to police in which she denied having ever before accepted money for sex. Brandon also sought to cross-examine Sevey about her prior and subsequent prostitution in the area and her sexually transmitted disease that originated before June 21, 2003. The district court ruled this evidence inadmissible under Rule 412 and, alternatively, that its probative value was substantially outweighed by the danger of unfair prejudice or misleading the jury. Before closing argument, the Government made an oral motion in limine to prevent the defense from arguing that Smith or Sevey were involved with a pimp or participated in prostitution either before or after the events in question. The district court sustained the motion, barring the defense from discussing "prior or subsequent prostitution" or using the term "pimp."[4] Brandon contends that by prohibiting him from offering

---

[4]At oral argument, defense counsel insisted that the district court prohibited him from arguing that "someone else" committed the assault instead of Brandon. However, the district court prohibited only the use of the term "pimp" itself. Defense counsel was *not* prohibited from exploring whether another individual was responsible for the victims' injuries. See R. Doc. 190, at 469-70 ("I'm not going to rule that you can't argue that somebody else caused these injuries. You can argue that if you wish. The only concern that I would have is the use of the term 'pimp.' . . . I will direct you not to use that term, but that does not prevent you from suggesting that somebody else could have been involved."). Further, the district court made clear that it was preventing suggestions of only *prior or subsequent* prostitution. It

-6-

this evidence and related arguments, the district court violated his constitutional right to mount a complete defense by introducing relevant evidence.

The constitutional exception under Rule 412(b)(1)(C) protects, in part, defendants' "constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense." United States v. Pumpkin Seed, 572 F.3d 552, 559-60 (8th Cir. 2009). This right to introduce relevant evidence is one dimension of the Constitution's "guarantee[]" that "criminal defendants [receive] 'a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). But these rights are not unlimited. In sex-offense cases, the defendant's right to introduce evidence may "bow to accommodate other legitimate interests" including "concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Pumpkin Seed, 572 F.3d at 560 (quoting Michigan v. Lucas, 500 U.S. 145, 149 (1991)). "[T]he key inquiry . . . is whether the district court's exclusion of evidence . . . was arbitrary or disproportionate to the purposes that its exclusion was designed to serve." United States v. Walker, 917 F.3d 1004, 1009 (8th Cir. 2019) (alterations in original) (citation omitted).[5]

---

did not prohibit the defense from arguing that the transportation was the result of a contemporaneous prostitution agreement, which would suggest consent. See R. Doc. 190, at 470-71 ("I will stop an argument that suggests in any way prior or subsequent prostitution by these girls. You are certainly able to argue that that was going on at the time of this incident. . . . That they may have gotten into the car for purposes of prostitution."). Thus, the district court in fact gave defense counsel wide latitude to argue for an alternative explanation of the assault and the resulting physical evidence.

[5]Before the district court and before this Court, Brandon has occasionally referred to his right under the Confrontation Clause of the Sixth Amendment to confront and cross-examine adverse witnesses. See, e.g., United States v. Owens, 484 U.S. 554, 557 (1988) ("The Confrontation Clause . . . has long been read as securing an adequate opportunity to cross-examine adverse witnesses."). But whether couched in terms of the Confrontation Clause or in terms of the right to

Our cases have construed the Rule 412(b)(1)(C) constitutional exception narrowly. We have routinely held that evidence of a victim's other sexual behavior is properly excluded when that evidence is not highly probative of a material issue and would subject the victim to embarrassment, undermine the victim's credibility, or risk confusing the jury. See Walker, 917 F.3d at 1009 (holding, in a sexual exploitation case, that the district court's exclusion of the victim's prior and subsequent sexual communications with others did not violate the defendant's right to present evidence); United States v. Hawkghost, 903 F.3d 774, 778 (8th Cir. 2018) (holding that the district court did not violate defendant's right to present evidence when it prohibited him from cross-examining the victim about later instances of sexual abuse under the theory that the victim was projecting false allegations onto the defendant); United States v. Never Misses A Shot, 781 F.3d 1017, 1028-29 (8th Cir. 2015) (holding that district court did not violate defendant's right to present evidence when it excluded evidence of the victim's prior molestation which the defendant argued supported his theory that another actor caused the victim's sexual trauma); Pumpkin Seed, 572 F.3d at 559-62 (holding that the district court did not violate the defendant's right to present evidence when it excluded evidence of the victim's sexual relationship with a married man and false answers to a rape-kit interview which, according to the defendant, suggested a motive to falsely accuse him of rape). We have also rejected the argument that evidence of a victim's prior and subsequent prostitution is admissible under Rule 412(b)(1)(C) simply because it

_____

introduce relevant evidence, Brandon is making the same argument: by prohibiting him from admitting evidence of Smith's and Sevey's prior prostitution, the district court denied him "a meaningful opportunity to present a complete defense." Holmes, 547 U.S. at 324 (citation omitted). Thus, regardless of how Brandon may distinguish between his right to confront adverse witnesses and his right to introduce relevant evidence, our analysis of whether there was a constitutional violation is the same. See United States v. Bear Stops, 997 F.2d 451, 454 (8th Cir. 1993) ("The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence." (citation omitted)); cf. Lucas, 500 U.S. at 149 ("To the extent that [the evidentiary rule in question] operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished.").

would allow the defendant to present a "far more powerful defense" to charges of sex trafficking when the evidence was not relevant to any material issues in the case. See United States v. Elbert, 561 F.3d 771, 776-77 (8th Cir. 2009).

Brandon relies on cases where we held that exclusion of sexual-behavior evidence under Rule 412 violated a defendant's constitutional rights. See United States v. Bear Stops, 997 F.2d 451 (8th Cir. 1993); United States v. Zephier, 989 F.3d 629 (8th Cir. 2021). In Bear Stops, the defendant was convicted of three counts of sexual abuse of a minor. At trial, the Government offered expert-witness testimony on the victim's behavioral characteristics, which were consistent with that of sexually abused children, as well as testimony on the victim's alleged bloody underwear. Bear Stops, 997 F.2d at 453. To respond, the defense sought to introduce uncontroverted evidence of a prior sexual assault of the same victim by different individuals that took place during the same time period as the assault allegedly committed by the defendant. However, the district court "rigorously limited the admission of [this] evidence" under Rules 412 and 403. Id. at 454-55. We reversed, holding that the district court abused its discretion by preventing the defendant from offering the undisputed prior sexual assault as an "alternative explanation" of the expert testimony and the physical evidence. Id. at 457-58. Likewise, in Zephier, another sex-abuse case, the Government offered expert testimony that the victim's drug use and mental health issues were "consistent with how rape victims often respond" to such abuse. Zephier, 989 F.3d at 636. To respond, the defense sought to provide an "alternative explanation" by introducing evidence that the victim "had been sexually assaulted 'several years' earlier by someone else." Id. at 635. Importantly, this prior sexual assault was corroborated by an FBI interview with the victim's mother. See id. at 637. However, the district court excluded the evidence under Rule 412. We again reversed, reasoning that "[b]y keeping [the defendant] from exploring even 'the basic factual details' of [the victim]'s prior sexual assault, the jury could 'have been led . . . to the conclusion' that [the victim's] difficulties were caused by [the defendant]'s alleged criminal conduct, and his alone." Id. (fourth alteration in original). This, we held, "deprived [the defendant] of his ability to present a complete defense." Id. at 636.

-9-

Brandon's case differs from <u>Bear Stops</u> and <u>Zephier</u> in two significant ways. First, <u>Bear Stops</u> and <u>Zephier</u> both involved a defendant seeking to introduce evidence of a *specific and undisputed* prior sexual assault. Here, Brandon seeks to argue that someone else committed the acts in question by providing a *largely unsubstantiated* alternative theory of the case to explain away the physical evidence. At the pretrial motions stage, Brandon provided no direct evidence to support his theory that he had a prior sexual encounter with Smith or that someone else was responsible for the crimes of which he is accused. He points only to circumstantial evidence of the victims' prior prostitution, such as vague references to a "pimp" or "boyfriend" that Smith and Sevey allegedly felt bound to protect. In <u>Bear Stops</u>, on the other hand, we emphasized that the prior assault was *undisputed* by the parties. See <u>Bear Stops</u>, 997 F.2d at 457 ("Because the evidence about the [prior sexual assault] was uncontroverted, the potential for jury confusion and for a distracting 'mini-trial' about the event was minimal."). And in <u>Zephier</u>, the defense offered evidence substantiating the prior sexual assault on pretrial motions by attaching an FBI interview report with the victim's mother. Even in cases where we have held that exclusion did *not* violate the defendant's constitutional rights, the defendant offered more than what Brandon offers here. See <u>Hawkghost</u>, 903 F.3d at 776-78 (involving a specifically documented prior sexual assault by another individual, though we held that admission was not constitutionally required); <u>Never Misses A Shot</u>, 781 F.3d at 1021, 1028-29 (involving evidence of specific prior molestations suffered by one of the victims, though we held that admission was not constitutionally required). In contrast, the highly speculative nature of Brandon's proffered evidence cuts significantly against admission under Rule 412. See <u>United States v. Kenyon</u>, 397 F.3d 1071, 1079 (8th Cir. 2005) (concluding that the district court did not err in excluding sexual-behavior evidence under Rule 412 because, in part, the theory of its relevance "was entirely speculative").

Second, in both <u>Bear Stops</u> and <u>Zephier</u>, the defense offered the prior sexual assault evidence to provide an alternative explanation for expert testimony that, standing alone, directly implicated the defendant. Indeed, the inability of the

defendant to respond to expert testimony on the behavioral manifestations of sexual assault victims was central to our holding in both cases. See Bear Stops, 997 F.2d at 457 ("Accordingly, we hold that the district court abused its discretion and erred when it refused to admit the basic factual details [of the prior sexual assault] *when that evidence was offered to provide an alternative explanation for the prosecution's persuasive evidence* about [the victim]'s behavioral manifestations of a sexually abused child." (emphasis added)); Zephier, 989 F.3d at 637 n.3 ("None of the other cases in which we have upheld the exclusion of a victim's prior sexual assault involved expert testimony of this type . . . ."). We concluded that, by not allowing the defendant to "argue to the jury . . . that the difficulties [the victim] experienced were the result of a prior crime, not the one he allegedly committed," the district court left the defendant "unable to effectively counter" the expert testimony. Zephier, 989 F.3d at 636. Here, while the Government did offer some expert testimony on traumatic events and how victims process and recollect those events, this testimony did not directly implicate Brandon but rather was used to explain the victims' occasionally inconsistent recollections of events. Indeed, Brandon did not offer the sexual-behavior evidence to rebut that expert testimony but to rebut the DNA evidence linking him to the crime. Thus, this case falls outside of the narrow circumstances covered by Rule 412(b)(1)(C), as identified by our precedent.

Given the speculative nature of Brandon's theory, the district court's exclusion of the sexual-behavior evidence was not arbitrary or disproportionate to the purposes served by exclusion, including avoiding further embarrassment and harassment of the victims, avoiding possible confusion of the issues by the jury, and preventing a "thinly-veiled attack on [the victims'] general credibility." Pumpkin Seed, 572 F.3d at 560. Accordingly, we conclude that the district court did not err in ruling that this evidence was inadmissible under Rule 412(b)(1)(C).

B.

Next, Brandon argues that the district court erred by denying his requested jury instructions on two issues. He contends that the district court should have included an additional instruction on Smith and Sevey's lack of consent to be transported across state lines as a required element of the kidnapping charge. He also contends that the district court should have included knowledge of the victims' ages as an element of the transportation-of-a-minor charge. "We review a district court's formulation of the jury instructions for abuse of discretion, and its interpretation [of] the law de novo." United States v. Haynie, 8 F.4th 801, 804 (8th Cir. 2021).

1.

Brandon first takes issue with the district court's kidnapping instructions. While the district court included a lack-of-consent requirement in its jury instructions for Element One (seizure), it did not include a lack-of-consent requirement as to Elements Three and Four (transportation across state lines). Brandon argues that this instruction potentially misled the jury into thinking that the Government had to prove lack of consent for the seizure element only, not for the transportation element. We disagree.

Jury instructions are sufficient "if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it." United States v. Franklin, 960 F.3d 1070, 1072 (8th Cir. 2020) (citation omitted). "A defendant is not entitled to a particularly worded instruction on his theory of defense, but he should be given an avenue to present his contention." Id.

Here, the district court's jury instructions on kidnapping satisfied this standard. The instructions largely tracked the statutory language in 18 U.S.C. § 1201(a), which imposes criminal liability on anyone who "unlawfully seizes,

-12-

confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person" in interstate commerce. The instructions also reflected that the "victim's lack of consent is a fundamental element of kidnapping." United States v. McCabe, 812 F.2d 1060, 1061 (8th Cir. 1987) (citing Chatwin v. United States, 326 U.S. 455, 464 (1946)). Indeed, contrary to Brandon's suggestion, the instructions explicitly included a lack-of-consent requirement. Element One required the Government to prove that Brandon "unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, carried away, or kept [the victim] *without her consent*." R. Doc. 172, at 14, 15 (emphasis added). Element Three then required that "the Defendant voluntarily and intentionally transported [the victim] while she was seized, confined, inveigled, decoyed, kidnapped, abducted, carried away, or kept," R. Doc. 172, at 14, 15, clearly referencing the same language in Element One. Thus, it stands to reason that the lack-of-consent requirement in Element One carried through to Element Three. Additional consent instructions "would have been largely duplicative" and thus were not required. Franklin, 960 F.3d at 1073. Accordingly, we find no abuse of discretion.

2.

Brandon also argues that the district court erred by denying his proposed jury instruction requiring the Government to prove that Brandon knew the ages of Smith and Sevey when he transported them across state lines. The transportation-of-minors statute imposes criminal liability on any "person who *knowingly* transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in [unlawful sexual activity]." 18 U.S.C. § 2423(a) (emphasis added). Relying on Rehaif v. United States, 139 S. Ct. 2191, 2194 (2019) and Flores-Figueroa v. United States, 556 U.S. 646, 647 (2009), Brandon argues that the "knowingly" mens rea requirement applies to the age element of the crime as well as to the transportation element. As defense counsel conceded at oral argument, however, we recently considered and expressly rejected this same argument in United States v. Moreira-Bravo, 56 F.4th 568, 574 (8th Cir. 2022) ("'[K]nowingly' does not apply to [§ 2423(a)'s] age requirement."). We are

bound by this decision of a prior panel. Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). Thus, we hold that the district court correctly instructed the jury on Brandon's transportation-of-a-minor charge.

C.

We next address Brandon's argument that the district court improperly admitted two instances of prior crimes, wrongs, or acts under Rule 404(b). "We review evidentiary rulings like this one for an abuse of discretion and will 'revers[e] only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Vaca, 38 F.4th 718, 720 (8th Cir. 2022) (alteration in original) (citation omitted) (reviewing admission of evidence under Rule 404(b)).

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act" is inadmissible to show the defendant's propensity to commit crimes but is admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "We employ a four-part test to determine whether a district court abused its discretion in admitting 404(b) evidence." United States v. Williams, 796 F.3d 951, 958 (8th Cir. 2015). Such evidence is properly admitted if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." Id. at 959 (citation omitted); see also Fed. R. Evid. 403 (allowing the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," inter alia, "unfair prejudice"). We have emphasized that Rule 404(b) is a "rule of inclusion." United States v. Johnson, 860 F.3d 1133, 1142 (8th Cir. 2017) (citation omitted). For that reason, "[w]e 'will reverse only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct.'" Id. (citation omitted).

-14-

1.

Brandon first challenges the admission of his 2004 conviction for kidnapping. On April 7, 2004, Brandon approached a parked car in Mills County, Iowa, and forcibly kidnapped a teenage girl at knifepoint. The girl was in the car with a male teenager who then pursued Brandon's vehicle and forced it off the road. Initially, Brandon denied the allegation with a fabricated story, but he later admitted to the kidnapping. Pursuant to the 2004 investigation of the incident, officers searched Brandon's property and found a bra, women's underwear, a black dress, and a hunting knife in his car. The district court admitted evidence of this conviction over Brandon's objection. He now argues that the evidence was admitted for an improper propensity purpose and, in the alternative, was unduly prejudicial.

Applying the four-prong test for 404(b) evidence, we find that the district court did not abuse its discretion. As to the first prong, the 2004 conviction is relevant to material issues, including Brandon's intent or plan to commit the crimes at issue and his identity as the assailant. "By pleading not guilty, [Brandon] placed every element of the charges brought against him at issue," Johnson, 860 F.3d at 1142, including intent to transport the victims against their will and intent to engage in unlawful sexual activity. And "[e]vidence of past crimes can be probative of a defendant's intent to commit a similar act." Id. (citation omitted). Here, there are several similarities: a teenage female victim, holding the victim at knifepoint, and transporting the victim in his vehicle. Since the 2004 kidnapping took place in the same part of Mills County as the alleged incident here—indeed, the same area where Brandon lived at the time and where Smith and Sevey were picked up on Interstate 29—it is also relevant to establishing Brandon's identity as the assailant. Further, an investigatory search leading to the 2004 conviction located a bra, women's underwear, and a black dress in Brandon's car. The victims here alleged that Brandon similarly took their clothing and underwear and placed them in bags in his car. Thus, the evidence also suggests a modus operandi for Brandon's crimes. Cf. United States v. Oman, 427 F.3d 1070, 1075 (8th Cir. 2005) (noting that "the

-15-

distinctiveness of the facts that make the crimes unique" may support admitting Rule 404(b) evidence under a "signature facts or modus operandi theory").

Proceeding to the second prong, the kidnapping at the heart of the 2004 conviction took place within a year of the criminal activity alleged here. And, as already addressed, the crimes had several similarities. On the third prong, the 2004 conviction is supported by sufficient evidence. See United States v. Winn, 628 F.3d 432, 436 (8th Cir. 2010) ("[T]he district court need only determine that a reasonable jury could find by a preponderance of the evidence that the defendant committed the prior act."). Finally, the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. In the Rule 404(b) context, we will not reverse on this ground "if we can discern from the record that the trial court performed the requisite balancing" under Rule 403. United States v. Gutierrez-Ramirez, 930 F.3d 963, 968 (8th Cir. 2019) (per curiam) (quoting United States v. Riepe, 858 F.3d 552, 561 (8th Cir. 2017)). Here, the record indicates that the district court performed the requisite balancing. Further, the district court included a lengthy limiting instruction prior to allowing this evidence before the jury. Limiting instructions "diminish[] the danger of any unfair prejudice arising from the admission of other acts." United States v. Halk, 634 F.3d 482, 488 (8th Cir. 2011) (citation omitted). Thus, the district court did not abuse its discretion in admitting Brandon's 2004 conviction.

2.

Brandon also challenges the admission of evidence of an attempted kidnapping in 2003. The incident was substantiated by testimony from a single witness who testified that in 2003, he saw Brandon holding the witness's best friend's girlfriend at knifepoint in a cornfield near Folsom Lake, which is near Interstate 29 in Mills County, Iowa. Before trial, Brandon sought to exclude this evidence, but the district court denied the motion.

Applying the same framework, we again find that the district court did not abuse its discretion in admitting testimony on the 2003 incident. First, as with the 2004 conviction, the 2003 incident is relevant to material issues such as intent, identity, and plan. As to the second prong, the 2003 incident is similar to the present case and not overly remote in time. Both involved holding females at knifepoint, and both took place in the same geographic vicinity: near Interstate 29 in Mills County, Iowa. The third prong is arguably the closest call since the 2003 incident is supported only by the testimony of a single witness. However, to be admissible under Rule 404(b), "the district court need only determine that a reasonable jury could find by a preponderance of the evidence that the defendant committed the prior act." Winn, 628 F.3d at 436. We have held that testimony from even a single witness is sufficient to support such a finding. See United States v. Johnson, 439 F.3d 947, 953 (8th Cir. 2006). Whether the jury believes the witness is a matter of credibility, and "we generally leave credibility determinations to the jury." Id. Finally, the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. Again, the district court performed the requisite balancing under Rule 403 and included a limiting instruction. Accordingly, there was no abuse of discretion.

D.

Brandon next contends that the district court erred in admitting evidence of a prior sex-offense conviction—Brandon's 2004 conviction for indecent contact with a child—under Rule 413. He argues, under Rule 403, that the district court should have excluded the evidence because its minimal probative value was substantially outweighed by unfair prejudice. As above, "[w]e review evidentiary rulings for abuse of discretion, reversing only if admission affected a defendant's substantial rights." United States v. Sanchez, 42 F.4th 970, 974 (8th Cir. 2022) (reviewing admission of evidence under Rules 413 and 414).

Rule 413 provides, "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other

sexual assault." Fed. R. Evid. 413(a). "The evidence of prior similar offenses may be considered for all relevant purposes 'including the defendant's propensity to commit such offenses.'" United States v. Arias, 936 F.3d 793, 797 (8th Cir. 2019) (citation omitted). However, such evidence is still subject to Rule 403 balancing. Id. "The district court must first determine if the prior sexual assault is relevant and then whether it would be more probative than prejudicial under Rule 403." United States v. Crow Eagle, 705 F.3d 325, 327 (8th Cir. 2013) (per curiam). Ordinarily, we give "great deference" to the district court's balancing of the prejudicial and probative impacts of evidence. United States v. Weber, 987 F.3d 789, 793 (8th Cir. 2021) (citation omitted).

We find that the district court did not abuse its discretion in admitting evidence of Brandon's prior sex-offense conviction under Rule 413. At issue is Brandon's 2004 conviction arising from his indecent contact with his then-11-year-old niece in 2000, which the district court admitted over Brandon's objection. At trial, Brandon's niece testified that Brandon touched her breasts and genitals, asked her to touch his genitals, and offered her money for sex. The niece testified that Brandon molested her at his house, in his truck, and once in her grandmother's house. Brandon argues that the specifics of this prior conviction are sufficiently distinct from the present crime that the prior conviction has little probative value. However, to be probative of the defendant's propensity to commit the charged offense, the prior sexual assault must merely have been "committed in a manner similar to the charged offense." Crow Eagle, 705 F.3d at 327 (citation omitted); see also United States v. Luger, 837 F.3d 870, 874 (8th Cir. 2016). The 2004 conviction is similar to the conduct alleged here in several ways: they both occurred in Mills County, Iowa; they both involved molestation and assault of a female minor; they both involved offers of money to perform sex acts; and they both involved Brandon transporting and assaulting the minor in his truck. Thus, the prior sex offense is clearly relevant and highly probative of Brandon's propensity to commit similar offenses.

The sex-offense conviction is also not unfairly prejudicial because it does not create "an undue tendency to suggest decision on an improper basis." Weber, 987 F.3d at 793 (citation omitted). Importantly, Brandon's propensity to commit sex crimes is not an "improper basis" upon which a jury could rely when considering evidence admitted under Rule 413. Id.; see also United States v. Hollow Horn, 523 F.3d 882, 888 (8th Cir. 2008) ("Because . . . propensity evidence is admissible under Rule 413, [the defendant] has not shown that its prejudice was *unfair*."). Further, the district court provided limiting instructions here by noting the extent to which the jury could rely on the evidence. This reduced the potential for unfair prejudice. Weber, 987 F.3d at 793-94. In sum, the district court did not abuse its discretion in admitting the prior sex-offense conviction.

E.

Finally, Brandon argues that he was entitled to a new trial because of the errors alleged above and because there was insufficient evidence to support the guilty verdict. We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022). District courts "may vacate any judgment and grant a new trial if the interest of justice so requires." Id. (quoting Fed. R. Crim. P. 33(a)). However, they should do so only "where the evidence presented weighs heavily enough against the verdict that the court believes a miscarriage of justice may have occurred." United States v. Davenport, 910 F.3d 1076, 1080 (8th Cir. 2018) (citation omitted). When considering sufficiency of the evidence challenges, we "view the evidence in the light most favorable to the verdict, and uphold the jury's decision 'if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" United States v. Long Pumpkin, 56 F.4th 604, 610 (8th Cir. 2022) (citation omitted).

We find sufficient evidence in the record to support Brandon's guilty verdict, and he has not identified any miscarriage of justice. Brandon focuses on the various inconsistencies between the statements of Smith and Sevey. We recognize that there

are some inconsistencies between Smith's and Sevey's 2003 statements to investigators, as well as between their 2003 statements to investigators and their in-court testimony. However, viewing the evidence in the "light most favorable to the verdict," as we must, see id., we find that a reasonable jury could have reconciled these inconsistencies. For one, Smith and Sevey were young—just 14 and 15 years old at the time, respectively. They had just experienced unspeakable trauma when called upon to speak to investigators. Further, they were admitting to police that they had previously engaged in prostitution or sexual activity. As to the inconsistencies between the 2003 testimony and their later in-court testimony, the near-decade-long delay in identifying the culprit makes the gaps in their recollection of events unremarkable. Even so, occasional inconsistencies in witness testimony are not enough to overturn a jury verdict. See United States v. Delacruz, 865 F.3d 1000, 1006 (8th Cir. 2017) ("[I]t is within the province of the jury to make credibility assessments and resolve conflicting testimony." (citation omitted)). We thus find no abuse of discretion in the district court's denial of Brandon's motion for a new trial.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____